Charles T. BENSON, Appellant–Petitioner,

v.

STATE of Indiana, Appellee–Respondent.

No. 50A05–0203–PC–113.

Court of Appeals of Indiana.

Dec. 30, 2002.

---

Susan K. Carpenter, Public Defender of Indiana, Randy A. Elliott, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge

### STATEMENT OF THE CASE

In May 1990, pursuant to a plea agreement, Charles T. Benson pleaded guilty to charges of Child Molesting, as a Class C felony, and Attempted Child Molesting, as a Class C felony. The State agreed to dismiss an unrelated charge of Child Molesting, as a Class B felony, previously filed against Benson, and not to pursue an habitual offender enhancement. The trial court accepted the guilty plea and entered judgment of conviction on both Class C felonies. However, at the sentencing hearing, the trial court sua sponte vacated the guilty plea and set the case for trial. A jury later convicted Benson on all three charges. The jury also found Benson to be an habitual offender, and the trial court imposed a sixty-six year sentence. Benson appealed the attempted child molesting conviction, which this court affirmed. *See Benson v. State,* 574 N.E.2d 934 (Ind.Ct. App.1991).

Benson then filed a petition for Post-Conviction Relief ("PCR") claiming the tri-

al court erred when it vacated his guilty plea and failed to sentence him to sixteen years as provided in the plea agreement. Benson also claimed that his counsel was ineffective for having failed to challenge the vacation of his guilty plea on appeal. The post-conviction court denied Benson's petition, finding that the trial court had never accepted Benson's plea agreement because there was no entry to that effect in the order book. Benson now appeals the denial of his PCR petition and raises two issues for our review, one of which we find dispositive, namely, whether Benson was denied the effective assistance of counsel.

We reverse and remand.[1]

### FACTS AND PROCEDURAL HISTORY

On October 13, 1989, the State charged Benson with child molesting, as a Class B felony, based on allegations that he molested his five-year-old stepdaughter, J.W. While Benson was out on bond, the State charged him with unrelated counts of attempted child molesting and child molesting, both as Class C felonies. Under the terms of a written plea agreement, in exchange for Benson's guilty plea on the two C felonies and a sixteen-year executed sentence, the State dismissed the first charge of child molesting and agreed not to pursue the habitual offender enhancement. At the May 14, 1990, plea hearing, the trial court determined there was a factual basis

---

1. Based on our determination that the trial court accepted the guilty plea and plea agreement, we find the ineffective assistance of counsel claim to be dispositive. Therefore, we need not address Benson's claim that the trial court committed fundamental error when it vacated his guilty plea. However, contrary to the State's contention, Benson has not waived his fundamental error claim. We

note that in *Reffett v. State,* 571 N.E.2d 1227, 1229 (Ind.1991), our supreme court stated "If a sentence that violates express statutory authority is facially erroneous, a sentence that violates the express terms of a plea agreement is also facially erroneous...." Sentencing errors are not subject to waiver and may be raised at any time. *Duncan v. State,* 514 N.E.2d 1252, 1253 (Ind.1987).

for the guilty plea, stated that it was "going to enter judgment at this time," and "ordered and adjudged . . . Benson . . . [to be] guilty." The State requested that Benson be incarcerated that day "since the Court has entered judgment of conviction." The judgment of conviction is not reflected in the court's order book for May 14, 1990. But the chronological case summary ("CCS") entry for that day indicates that the court entered a judgment of conviction. The court declined to incarcerate Benson before the sentencing hearing that was set for June 5, 1990.

On June 4, 1990, Benson filed a motion to withdraw his guilty plea. At the hearing on that motion, the State argued that Benson could not withdraw his guilty plea since he had already been convicted and was able to challenge his conviction under the post-conviction rules. The court denied the motion and entered an order which read, in pertinent part, as follows:

4. The Court accepted the plea agreement and advised the Defendant of his rights . . . and entered Judgment against the Defendant.

\* \* \*

8. The Court finds no just reason has been shown to allow the Defendant to withdraw his plea of guilty . . . the Court has entered Judgment against the Defendant and he now awaits sentencing.

Between the entry of judgment and the sentencing hearing, the trial court received letters from two social workers expressing their concern that Benson would be released from jail in time to molest his stepdaughter again given the number of years Benson would serve under the plea agree-ment and his stepdaughter's young age. At the sentencing hearing, the trial court informed Benson that it would "not accept the plea agreement as it is with the dismissal of Count I [the B felony]." The court suggested that the plea agreement should also include a guilty plea and sentence on the B felony. After conferring with his attorney, Benson refused to modify the plea agreement since he had "originally agreed to have that charge dismissed." The trial court then "rejected" the plea agreement, declared the judgment of guilty a "nullity," and consolidated the separate causes for trial.

At trial, the jury convicted Benson on all three counts of child molesting, and the court imposed a sixty-six year sentence. Benson, represented by his trial counsel, appealed the judgment alleging insufficient evidence to support the conviction on the attempted child molesting count. This court affirmed the conviction. In August 2000, Benson filed an amended PCR petition, alleging fundamental error and ineffective assistance of counsel. Following a hearing in September 2001, the PCR court denied his petition, finding, in relevant part, that the trial court had not accepted the plea agreement. The PCR court stated:

A plea agreement was presented to the Court which was later rejected. Regardless of the terminology used in open Court at the time of submission, the trial Court Judge had not legally accepted the plea agreement as the statements made were never reduced to a judgment and properly entered as such. (*See State v. Daniels*, 680 N.E.2d 829 (Ind. 1997)).

Benson now appeals.[2]

2. We heard oral argument on October 22, 2002.

## DISCUSSION AND DECISION

 The purpose of a petition for post-conviction relief is to raise issues unknown or unavailable to a defendant at the time of the original trial and appeal. *Lockhart v. State*, 632 N.E.2d 374, 375 (Ind.Ct.App.1994), *trans. denied.* "Thus, post-conviction relief is not a 'super appeal' which allows the rehashing of prior proceedings regardless of the circumstances surrounding them." *Collier v. State*, 572 N.E.2d 1299, 1301 (Ind.Ct.App.1991), *trans. denied.* When the petitioner has already been afforded the benefit of a direct appeal, post-conviction relief contemplates a rather small window for further review. *Montano v. State*, 649 N.E.2d 1053, 1056 (Ind.Ct.App.1995), *trans. denied.* The petitioner bears the burden of establishing his grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5). To the extent the PCR court denied relief in this case, Benson appeals from a negative judgment and faces the rigorous burden of showing that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the post-conviction court. *Williams v. State*, 706 N.E.2d 149, 154 (Ind.1999).

 A court that hears a post-conviction claim must make findings of fact and conclusions of law on all issues presented in the petition. *Allen v. State*, 749 N.E.2d 1158, 1164 (Ind.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 1925, 152 L.Ed.2d 832 (2002). The findings must be supported by facts and the conclusions must be supported by the law. *Id.* Our review on appeal is limited to these findings and conclusions. *Id.*

## Ineffective Assistance of Counsel

 Benson asserts that he was deprived of the effective assistance of both trial and appellate counsel. Benson argues that his attorney was ineffective when she failed to object in the trial court and raise on appeal the trial court's rejection of his plea agreement and unilateral vacation of his guilty plea. A claim of ineffective assistance of trial counsel, if not raised on direct appeal, may be presented in post-conviction proceedings. *Woods v. State*, 701 N.E.2d 1208, 1220 (Ind.1998), *cert. denied,* 528 U.S. 861, 120 S.Ct. 150, 145 L.Ed.2d 128 (1999).[3]

 There is a strong presumption that counsel rendered effective assistance and made all significant decisions in the exercise of reasonable professional judgment, and the burden falls on the defendant to overcome that presumption. *Gibson v. State*, 709 N.E.2d 11, 13 (Ind.Ct.App.1999), *trans. denied.* To make a successful ineffective assistance claim, a defendant must show that: (1) his attorney's performance fell below an objective standard of reasonableness as determined by prevailing professional norms, and (2) the lack of reasonable representation prejudiced him. *Mays v. State*, 719 N.E.2d 1263, 1265 (Ind.Ct.App.1999) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)), *trans. denied.* The prejudice component requires the defendant to show that there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. *Ben–Yisrayl v. State*, 738 N.E.2d 253, 260 (Ind. 2000), *cert. denied,* 534 U.S. 1164, 122 S.Ct. 1178, 152 L.Ed.2d 120 (2002).

**3.** Benson's case illustrates the danger in being represented by the same counsel at trial and on appeal. This practice is dangerous because "it is unreasonable to believe that counsel would [ ] raise[ ] the question of his own competency [on] appeal." *Askew v. State,* 500 N.E.2d 1219, 1220 (Ind.1986).

## A. Trial Counsel

█ Benson first argues that his attorney was ineffective for failing to object to the trial court's rejection of the plea agreement and vacation of his guilty plea. To determine whether trial counsel was ineffective, we must first determine whether the trial court, in fact, accepted the guilty plea and plea agreement. The PCR court found that the trial court had not accepted Benson's plea agreement because the court's in-court statements "were never reduced to a judgment and properly entered as such." In its order denying Benson's PCR petition, the post-conviction court relied on our supreme court's opinion in *State v. Daniels*, 680 N.E.2d 829, 833 (Ind. 1997), which states that "[c]ourts ... speak through their order books, not through the judge's unarticulated intentions." However, the court's reliance on *Daniels* is misplaced.

In *Daniels*, the supreme court determined that the trial court did not accept the defendant's guilty plea where, among other things, no judgment was entered in the order book. *Id.* at 834. The defendant filed a motion to withdraw his plea of not guilty and enter a guilty plea. The final paragraph of that motion, signed by the court, included the statement that the court "now accepts the defendant's plea of guilty." *Id.* at 831. But at the guilty plea hearing, the court stated it would take the guilty plea under advisement. The CCS for that day also showed that the court had only taken the guilty plea under advisement. At the sentencing hearing, the court stated it was rejecting the guilty plea and later issued an order stating that it rejected the guilty plea "which was under advisement." *Id.* at 833. The defense counsel did not object on grounds that the court had already accepted the guilty plea and even acknowledged that the court had taken the plea under advisement. Fur-

ther, the court did not enter a judgment of conviction on the guilty plea. Our supreme court found that the signed plea motion did not establish that the trial court had accepted defendant's guilty plea because the court's transcribed statements and the parties' and the court's conduct all indicated otherwise. *Id.* at 834. The court concluded, "we are directed to no order book entry finding Daniels guilty pursuant to the plea agreement, nor any evidence that acceptance of the plea ... was communicated by order or otherwise." *Id.*

Here, while there is no order book entry indicating that the trial court accepted Benson's guilty plea, the undisputed evidence shows that it had. Unlike in *Daniels*, the trial court explicitly stated at the plea hearing that it accepted the guilty plea and that it was entering judgment against Benson. The trial court's acceptance of the guilty plea also appears in the CCS entries following both the plea and sentencing hearings. The CCS entry following the plea hearing reads in part:

> The Court finds a factual basis for the plea of guilty and *the Court enters Judgment of Conviction.* Court Orders presentence investigation be made by the Probation Department ... Court sets sentencing date for June 5, 1990.... Defendant shall remain on bond until June 5.

(Emphasis added). And the CCS entry following the sentencing hearing states in part:

> *The Court* on May 14, 1990, *accepted a plea of guilty* by the defendant to Counts I and II in this cause ... the Court having given consideration to the plea agreement ... now rejects the plea agreement and enters in behalf of the defendant in this cause the plea of not

guilty . . . and sets this for trial by jury. . . .

(Emphasis added).

On these facts, the absence of an order book entry is not dispositive. This court has recognized that the entry of a judgment in the court's order book is merely a ministerial function of the trial clerk. *Conner v. Conner,* 666 N.E.2d 921, 924 (Ind.Ct.App.1996) (citing *Bailer v. Dowd,* 219 Ind. 624, 40 N.E.2d 325, 326 (1942)). The CCS is an official record of the trial court. Indiana Trial Rule 77(B).[4] Here, the official record shows unequivocally that the trial court had accepted Benson's guilty plea and entered judgment of conviction.

Moreover, unlike the court and the parties in *Daniels,* here the court, Benson, and the State behaved as if the court *had* accepted the guilty plea. After the plea hearing, the State asked the court to place Benson in jail since the court had entered a judgment of conviction. Later, the State asserted that Benson could not withdraw his guilty plea since a judgment of conviction had been entered and the post-conviction rules were Benson's exclusive remedy.

Finally, the court refused Benson's motion to withdraw his guilty plea because no just reason had been shown to allow Benson to withdraw the plea and judgment had been entered. It is clear from the transcript of the plea hearing, the court's order denying Benson's motion to withdraw his guilty plea, and the two CCS entries that the trial court accepted the guilty plea and entered a judgment of conviction. All parties, including the court, acted in a manner consistent with that understanding.

 Further, a plea agreement was not merely "presented to the Court." Benson's plea was not an open plea, but a plea tied to the plea agreement. When the trial court accepted Benson's guilty plea it necessarily accepted his plea agreement because it could not accept the plea without also accepting the agreement and its terms. *State v. Barkdull,* 708 N.E.2d 58, 59 (Ind.Ct.App.1999); *Lee v. State,* 652 N.E.2d 113, 114 (Ind.Ct.App.1995); *Steele v. State,* 638 N.E.2d 1338, 1339–40 (Ind.Ct.App.1994).[5] If there were any doubt, when the court issued its order denying Benson's motion to withdraw his guilty plea, as we have already noted, the court

---

4. Trial Rule 77 regarding court records states:

 (B) Chronological case summary. For each case, the clerk . . . shall maintain a sequential record of the judicial events in such proceeding. . . . Notation of judicial events shall set forth the date of the event and briefly define any documents, orders, rulings, or judgments filed or entered in the case.
 . . . The chronological case summary shall be an official record of the trial court and shall be maintained apart from other records of the court and shall be organized by case number.
 * * *
 (D) Record of judgments and orders (order book). The clerk of the circuit court shall maintain a daily, verbatim, printed compilation of all judgments of the court [and] designated orders of the court. . . .

5. In accepting a felony guilty plea the preferred procedure is to defer acceptance of a guilty plea and plea agreement and entry of judgment until the court has had the opportunity to review the presentence report. Ind. Code § 35–35–3–3(a). For example, in *Spencer v. State,* 634 N.E.2d 72, 73–74 (Ind. Ct.App.1994), *trans. denied,* the trial court told the defendant that although it was accepting the guilty plea and entering judgment of conviction, it would decide whether to accept or reject the plea agreement after the sentencing hearing and the opportunity to review the presentence report and that if the court did not accept the plea agreement, the judgment of conviction would be vacated and the plea of not guilty would be reinstated for each count. This procedure was tantamount to taking a guilty plea and plea agreement under advisement pending review of the presentence investigation.

affirmed that it had "accepted the plea agreement ... and entered Judgment against the Defendant." *See Reffett v. State,* 571 N.E.2d 1227, 1230 (Ind.1991); *Bartzis v. State,* 502 N.E.2d 1347, 1349 (Ind.Ct.App.1987).[6]

■ Because we determine that the evidence leads unerringly to the conclusion that the trial court accepted Benson's guilty plea and plea agreement, we must now determine whether counsel was ineffective for failing to object to the court's unilateral vacation of his guilty plea. Contrary to Benson's assertion, his trial counsel did object when the trial court vacated the guilty plea. When the trial court set aside the plea agreement, Benson's counsel stated "Your Honor ... in light of the fact that we had originally agreed to have that charge dismissed, *he's not willing to agree to anything else at this point.*" (Emphasis added). Thus, Benson's trial counsel did not acquiesce, but stood by the plea agreement. This was a sufficient objection.[7] Benson's trial counsel was not ineffective.

## B. Appellate Counsel

■ Benson also argues that his attorney was ineffective for failing to raise the vacation of his guilty plea on direct appeal. The standard of review for a claim of ineffective assistance of appellate counsel is the same as for trial counsel; that is, the defendant must show that appellate counsel was deficient in his performance and that the deficiency resulted in prejudice. *Bieghler v. State,* 690 N.E.2d 188, 192–93 (Ind.1997), *cert. denied,* 525 U.S. 1021, 119 S.Ct. 550, 142 L.Ed.2d 457 (1998). Ineffective assistance claims for this level of proceedings generally fall into three basic categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Id.* at 193–95. To show that counsel was deficient for failing to raise an issue, defendant must overcome the strongest presumption of adequate assistance, and judicial scrutiny is highly deferential. *Ben–Yisrayl,* 738 N.E.2d at 261. Our supreme court has adopted the following test to evaluate these types of claims: (1) whether the unraised issues are significant and obvious from the record; and (2) whether the unraised issues are "clearly stronger" than the raised issues. *Timberlake v. State,* 753 N.E.2d 591, 606 (Ind.2001), *cert. denied,* —— U.S. ——, 123 S.Ct. 162, 154 L.Ed.2d 61 (2002). To prevail on a claim of ineffective assistance of appellate counsel, "a defendant must show from the information available in the trial record or

---

**6.** For the first time at oral argument, the State, relying on this court's opinion in *Beech v. State,* 702 N.E.2d 1132 (Ind.Ct.App.1998), argued that the trial court had the authority to set aside Benson's guilty plea. In *Beech,* we held that a court may, on its own motion, set aside a guilty plea if the defendant asserts his innocence after the plea has been accepted but prior to sentencing. *Id.* at 1136. "[A]ny defendant who openly straddles the fence by declaring both his guilt and innocence when tendering a guilty plea, or at any point before sentencing, runs the risk that the trial court will reject or set aside the plea." *Id.* The State's reliance on *Beech* is misplaced for two reasons. First, the trial court denied Benson's motion to withdraw his guilty plea,

and Benson never raised that issue on appeal. Thus, that issue is not before us. Second, the trial court did not set aside Benson's guilty plea because he had earlier declared his innocence but because the court had become dissatisfied with the plea agreement.

**7.** The State argues that Benson's counsel was not ineffective because her decision not to object to the trial court's vacation of the plea agreement was a "tactical decision" since Benson had filed a motion to withdraw his guilty plea eleven days before the trial court vacated the plea. Because we find that trial counsel did object to the trial court's vacation of the guilty plea, we reject that argument.

otherwise known to appellate counsel that appellate counsel failed to present a significant and obvious issue and that this failure cannot be explained by any reasonable strategy." *Id.*

■ While counsel is not required to raise every possible claim on direct appeal, *Jones v. Barnes,* 463 U.S. 745, 753–54, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) (noting that raising every colorable issue may bury more significant issues), Benson's attorney raised only one issue on direct appeal. She raised a sufficiency of the evidence claim on the conviction for attempted child molesting that carried with it a sentence of eight years. However, Benson's appellate counsel failed to raise the trial court's rejection of the plea agreement and vacation of the guilty plea. After conviction at trial, Benson received a sentence fifty years greater than the sentence provided under the plea agreement. He received a sentence of twenty years for Count I and thirty years for the habitual offender charge, which the State had agreed not to pursue.

■ But Indiana Code Section 35–35–3–3(e) mandates: "If the court accepts a plea agreement, it shall be bound by its terms." *Freije v. State,* 709 N.E.2d 323, 324 (Ind.1999). Indeed, Benson's plea agreement states:

The defendant has been informed and understands that if he enters into a plea agreement and the Court accepts the plea, the Court is bound by the terms of this plea agreement.

*See* Ind.Code § 35–35–1–2(a)(4)(B); *Spencer,* 634 N.E.2d at 74 (before accepting guilty plea, court must inform defendant that if there is a plea agreement which the court accepts the court is bound

by its terms). A plea agreement is contractual in nature binding the defendant, the State, and the trial court. *Pannarale v. State,* 638 N.E.2d 1247, 1248 (Ind.1994). It is well settled that failure to sentence in accordance with an accepted plea agreement is reversible error. *See Reffett,* 571 N.E.2d at 1230 (holding trial court was obligated to sentence defendant in accordance with plea agreement even though trial court accepted plea agreement without first seeing defendant's pre-sentence report); *Lee,* 652 N.E.2d at 114 (holding trial court lacked authority to later reject plea agreement after it had accepted guilty plea); *Steele,* 638 N.E.2d at 1340 (holding trial court erred by refusing to sentence defendant in accordance with terms of plea agreement after trial court accepted defendant's guilty plea); *Bartzis,* 502 N.E.2d at 1349 (holding trial court was bound by plea agreement when it found defendant guilty at plea hearing and stated it accepted plea agreement).

In her affidavit, Benson's attorney stated that she had no independent recollection of whether she "considered pursuing or alleging as error the [trial court's vacation of the guilty plea]."[8] We conclude that the vacation of the guilty plea was a significant and obvious issue and that there was no strategic reason to ignore it on appeal. We are compelled to conclude that counsel's failure to raise this issue was unreasonable.

■ While counsel's failure to appeal this issue was unreasonable, Benson still must demonstrate a reasonable probability that the outcome of the direct appeal would have been different. *Ben–Yisrayl,* 738 N.E.2d at 260. We have already con-

---

**8.** Benson's attorney was aware of the facts surrounding the vacation of the guilty plea since she had represented Benson at trial, and

she even objected when the trial court tried to change the terms of the plea agreement.

cluded that the trial court accepted the guilty plea and plea agreement. Again, a trial court's failure to sentence in accordance with an accepted plea agreement is reversible error. *Reffett,* 571 N.E.2d at 1230. Had that issue been raised, this court would have reversed the convictions and reinstated the plea agreement.

In sum, we conclude that the trial court erred when it accepted Benson's plea agreement and guilty plea, entered a judgment of conviction, and ordered a presentence investigation, but then, a full month later, unilaterally "rejected" the plea agreement, entered a not guilty plea and declared the judgment of conviction to be a "nullity." *Cf. Mabbitt v. State,* 703 N.E.2d 698 (Ind.Ct.App.1998) (holding trial court did not irrevocably accept guilty plea when it stated it accepted defendant's guilty plea and then rejected guilty plea in same dialogue, and court made no finding of guilt and it did not enter judgment of conviction). The evidence in this case leads unerringly and unmistakably to a conclusion opposite to that reached by the post-conviction court. Because Benson's attorney did not raise this error on direct appeal, we find that Benson was denied the effective assistance of appellate counsel. Thus, we reverse and remand for sentencing and disposition under the terms of the May 1990 plea agreement.

Reversed and remanded.

·SHARPNACK, J., and FRIEDLANDER, J., concur.