Darald W. CAREW, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0403–PC–231.

Court of Appeals of Indiana.

Nov. 9, 2004.

Susan K. Carpenter, Public Defender of Indiana, Brian Eisenman, Deputy Public

Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Darald W. Carew appeals the denial of his petition for post-conviction relief. Specifically, Carew contends that his appellate counsel was ineffective for failing to challenge on direct appeal the trial court's exclusion of his expert's opinion testimony. In particular, if allowed by the trial court, the expert would have opined that the detective used techniques during Carew's interview that would increase the likelihood of a false confession from someone with an IQ in the range of Carew. We conclude that Carew's appellate counsel was deficient because his decision to forego this issue was not reasonable given the extraordinary efforts of trial counsel to place this very issue before the appellate courts, including coordinating the challenge of this issue with *Miller v. State*— which was a case being tried around the same time as Carew's case that involved a similar issue—and because this issue was supported by precedent available at the time of Carew's direct appeal. We also find that Carew's appellate counsel's deficient performance prejudiced him because the appellate attorney in *Miller v. State* raised this issue on direct appeal, and the Indiana Supreme Court reversed Miller's convictions and awarded him a new trial. Under these circumstances, we reverse the

denial of Carew's petition for post-conviction relief and remand this case for a new trial.

### Facts and Procedural History

In July 1998, Carew's daughter, S.C., who was then five years old, gave a videotaped statement to an Indianapolis Police Department officer that Carew had inappropriately touched her when she was four years old. Carew subsequently admitted during a videotaped interview with IPD Detective Gregory Norris that he had fondled S.C. when she was three years old and had touched S.C.'s vagina with his penis when she was four years old. The State charged Carew with child molesting as a Class A felony, incest as a Class B felony, and child molesting as a Class C felony.

■ At his jury trial, Carew was represented by attorney Ray Casanova. Before trial, Casanova moved to suppress Carew's confession alleging that it was involuntary given his diminished intellectual functioning and Detective Norris' coercive interview tactics. Finding that Carew's confession was voluntary, the trial court denied the motion to suppress.[1]

Before trial, the State filed a motion in limine seeking exclusion of "[t]estimony from any expert witness in the form of opinions regarding the voluntariness of the Defendant's taped confession if such testimony is relevant only to the admissibility of the tape" and of "testimony from any expert witness regarding the Defendant's mental capacity or IQ." Tr. p. 192–93, 392–93. The trial court granted the motion with respect to evidence of the voluntariness of Carew's confession but denied the

---

1. We note that just because a trial court makes a threshold determination of sufficient voluntariness for admissibility of a defendant's confession at trial, the defendant may still challenge the weight of the confession at trial. *Miller v. State*, 770 N.E.2d 763, 773 (Ind.2002).

motion with respect to evidence of Carew's IQ.

At trial, the trial court admitted Carew's videotaped confession into evidence. Additionally, because S.C., who was six years old at the time of trial, was either unable or unwilling to fully respond to the prosecutor's questions, the trial court admitted S.C.'s videotaped statement into evidence as well. Casanova presented the testimony of Dr. Dennis Olvera, an educational psychologist who specializes in working with mentally handicapped individuals. Dr. Olvera testified that Carew has an IQ of 72, which falls "at the very low end of the range of borderline intellectual functioning," [2] and that Carew tested at the fourth grade level for math but less than the third grade level for both spelling and reading. *Id.* at 650.

Because of the trial court's pre-trial order excluding expert evidence regarding the voluntariness of Carew's confession, Casanova conducted an offer to prove with Dr. Olvera outside the presence of the jury. During the offer to prove, Dr. Olvera opined that Carew did not understand that he did not have to answer Detective Norris' questions. In yet another offer to prove, Dr. Olvera, who had watched Detective Norris' videotaped interview of Carew, testified that he observed behaviors from Detective Norris that would increase the likelihood of a false confession from someone with an IQ in the range of Carew. In particular, Detective Norris did not inform Carew of the seriousness of the charges at the beginning of the interview, refused to accept Carew's denials, implied that cooperation would bring lighter penalties, indicated that a confession would help his

daughter get through this period of difficulty, and suggested the existence of evidence that the police did not have. As a result, Dr. Olvera concluded that Carew's confession was involuntary.

Carew was convicted as charged, and the trial court sentenced him to an aggregate term of forty-eight years. On direct appeal, Carew was represented by attorney Timothy O'Connor. O'Connor raised the following five issues in Carew's appellate brief: (1) whether the trial court erred in admitting the videotaped statement of S.C. into evidence; (2) whether Carew's convictions for child molesting as a Class A felony and incest violate the Indiana Double Jeopardy Clause; (3) whether the trial court erred in admitting a gesture S.C. made in her mother's presence into evidence; (4) whether the trial court erred in admitting Carew's confession into evidence because it was involuntary; and (5) whether the trial court relied on an invalid aggravator in sentencing Carew. Despite Casanova's extensive offers to prove with Dr. Olvera at trial and Casanova's recommendation in the Pre–Appeal Form that this issue should be raised on appeal, O'Connor did not challenge the trial court's exclusion of Dr. Olvera's opinion testimony. In an unpublished memorandum decision, this Court found a double jeopardy violation and vacated the incest conviction but otherwise affirmed the trial court. *Carew v. State*, No. 49A04–0002–CR–48, 742 N.E.2d 45 (Ind.Ct.App. Dec.29, 2000).[3]

Carew then filed a petition for post-conviction relief, which he subsequently amended. One of the issues raised in the petition was that O'Connor rendered inef-

---

**2.** Dr. Olvera testified that "[b]elow 70 is [in the] range of mental retardation." Tr. p. 650.

**3.** Because the trial court ordered Carew's sentence for his incest conviction to run con-

current with his sentence for his Class A felony child molesting conviction, Carew's sentence remained the same.

fective assistance of appellate counsel for failing to challenge the trial court's exclusion of Dr. Olvera's opinion testimony. At the hearing, O'Connor testified that although he considered raising this issue on direct appeal, he decided against it because:

> Quite honestly, I thought that the issue of the involuntariness of the confession, given the factors of what happened, the detective coercing Mr. Carew, Mr. Carew's low I.Q., I thought that would carry the day on appeal. I didn't want to bog down the record. I had already raised five issues. I'm aware of the Court of Appeals' position basically that if most cases don't suffer from five bad things happening, so I didn't want to bog the record down with a sixth issue that I thought might not have any legs, so to speak. Also, I drew a distinction— I may not draw the same distinction now, but I drew the distinction at the time between an involuntary confession and a false confession. So those were the three central reasons that I didn't raise that particular issue.

P–C Tr. p. 13. O'Connor clarified that he believed Carew's confession was involuntary, not false, and that if he believed the confession was false, he would have raised that as an issue on direct appeal. O'Connor added that given the state of the law at the time of Carew's direct appeal, he did not believe the exclusion of Dr. Olvera's opinion testimony was a meritorious issue. However, O'Connor acknowledged that *Miller v. State,* 770 N.E.2d 763 (Ind.2002), which the Indiana Supreme Court decided nearly eighteen months after this Court's opinion in Carew's direct appeal, reached an opposite conclusion.

Following the hearing, the post-conviction court entered findings of fact and conclusions of law denying relief. Carew now appeals.

## Discussion and Decision

 Carew appeals the denial of his petition for post-conviction relief. A defendant who has exhausted the direct appeal process may challenge the correctness of his convictions and sentence by filing a post-conviction petition. *Stevens v. State,* 770 N.E.2d 739, 745 (Ind.2002), *reh'g denied, cert. denied,* 540 U.S. 830, 124 S.Ct. 69, 157 L.Ed.2d 56 (2003). Post-conviction procedures do not provide an opportunity for a super-appeal. *Id.* at 746. Rather, they create a narrow remedy for subsequent collateral challenges to convictions that must be based on grounds enumerated in the post-conviction rules. *Id.* Post-conviction proceedings are civil proceedings, and a defendant must establish his claims by a preponderance of the evidence. *Id.* at 745. Because the defendant is now appealing from a negative judgment, to the extent his appeal turns on factual issues, he must convince the appellate court that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. *Id.* In other words, the defendant must convince us that there is no way within the law that the court below could have reached the decision it did. *Id.* at 745–46. We do not defer to the post-conviction court's legal conclusions, but we do accept its factual findings unless they are "clearly erroneous." *Id.* at 746.

 On appeal, Carew contends that O'Connor rendered ineffective assistance of appellate counsel for failing to challenge the trial court's exclusion of Dr. Olvera's opinion testimony.[4] Claims of ineffective

---

4. Carew also contends that the trial court committed fundamental error by excluding Dr. Olvera's opinion testimony. However, the fundamental error doctrine is not applicable in post-conviction proceedings. *Boesch v. State,* 778 N.E.2d 1276, 1281 (Ind.2002), *reh'g*

assistance of appellate counsel are reviewed using the same standard applicable to claims of ineffective assistance of trial counsel. *Benson v. State*, 780 N.E.2d 413, 421 (Ind.Ct.App.2002), *reh'g denied, trans. denied.* To establish a post-conviction claim alleging a violation of the Sixth Amendment right to effective assistance of counsel, a defendant must establish before the post-conviction court the two components set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Wesley v. State*, 788 N.E.2d 1247, 1252 (Ind.2003), *reh'g denied.* First, a defendant must show that counsel's performance was deficient. *Id.* This requires showing that counsel's representation fell below an objective standard of reasonableness and that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed to the defendant by the Sixth Amendment. *Id.* Second, a defendant must show that the deficient performance prejudiced the defense. *Id.* To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would be different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

■■■■■ Ineffective assistance of appellate counsel claims generally fall into three categories: (1) denying access to the appeal; (2) waiver of issues; and (3) failure to present issues well. *Benson*, 780 N.E.2d at 421. Ineffectiveness is rarely found when the issue is the failure to raise a claim on direct appeal because the decision of what issue or issues to raise on appeal is one of the most important strategic decisions made by appellate counsel. *Stevens*, 770 N.E.2d at 760. We give considerable deference to appellate counsel's

strategic decisions and will not find deficient performance in appellate counsel's choice of some issues over others when the choice was reasonable in light of the facts of the case and the precedent available to counsel at the time the decision was made. *Taylor v. State*, 717 N.E.2d 90, 94 (Ind. 1999).

■■■■ In this case, O'Connor explained at the post-conviction hearing that his decision not to challenge the trial court's exclusion of Dr. Olvera's opinion testimony was strategic. In order to determine whether O'Connor rendered deficient performance by failing to raise this issue on direct appeal, we must examine whether O'Connor's decision was reasonable in light of the facts of the case and the precedent available to him at the time the decision was made.

We first observe that Casanova went to great lengths to preserve the exclusion of Dr. Olvera's opinion testimony for appeal. Casanova conducted two in-depth offers to prove at trial. Casanova filled out a Pre–Appeal Form for the appellate division of the Marion County Public Defender's office in which he designated the exclusion of Dr. Olvera's opinion testimony as a potential issue for appeal. The only other issue Casanova designated was the voluntariness of Carew's confession, which O'Connor raised on appeal. Casanova also sent an email to the appellate division informing them of the importance of this issue. When Casanova received a copy of the appellate brief filed by O'Connor and realized this issue had not been raised, he contacted both the appellate division and O'Connor alerting them to the omission and requesting that the appellate brief be supplemented.

---

denied; *Sanders v. State*, 765 N.E.2d 591, 592 (Ind.2002). Therefore, we address this issue

in the context of ineffective assistance of appellate counsel.

Before and during trial, Casanova worked with Ronnie Miller's trial attorneys in order to coordinate the defense of Carew with that of Miller, which was a murder case being tried in Marion County around the same time as Carew's case. Carew's and Miller's cases involved a similar issue, in that Miller, who was mentally retarded, confessed to the crimes in response to questionable police interrogation tactics. Dr. Olvera also provided consultation services in Miller's case. As discussed in more detail below, Miller's appellate attorney challenged the trial court's exclusion of his expert's opinion testimony regarding deceptive police tactics used in the interrogation of a mentally retarded individual. On appeal, the Indiana Supreme Court found that the exclusion of this testimony deprived Miller of the opportunity to present a defense and therefore ordered a new trial. *Miller*, 770 N.E.2d at 774.

Although *Miller* was not yet decided at the time of Carew's direct appeal, *Callis v. State*, 684 N.E.2d 233 (Ind.Ct.App.1997), *trans. denied*, which the *Miller* court relied on extensively, was decided in 1997. In that case, Callis' trial attorney sought to introduce the testimony of Dr. Richard Ofshe, a social psychologist in the field of coercive police interrogation and the phenomenon of false or coerced confessions. The trial court issued a pre-trial order that permitted Dr. Ofshe to testify "regarding the circumstances surrounding the statements [made by the defendant to the police] as it may affect the weight to be given such testimony" but prohibited Dr. Ofshe from testifying about the defendant's intent, guilt, or innocence or the truth or falsity of whether a witness had testified truthfully. *Id.* at 239. At trial, Dr. Ofshe testified generally about false confessions, but the trial court prohibited him from giving his opinion about the interrogation process in Callis' case. Callis' trial attorney then made an offer to prove in which

Dr. Ofshe testified that there was a dispute between the accounts of Callis and the police officers regarding Callis' statements and that someone was telling the truth and someone was lying.

Recognizing that Indiana Evidence Rule 704(b) prohibits lay and expert witnesses from testifying about whether another witness is telling the truth, this Court concluded on appeal "that the trial court properly admitted [Dr.] Ofshe's testimony regarding the phenomenon of coerced confessions and properly excluded his opinion about Callis's interrogation. As can be seen in Callis's offer of proof, the aim of [Dr.] Ofshe's excluded testimony was to express an opinion as to which witness was telling the truth about Callis's statements." *Id. Callis* stands for the proposition that expert opinion testimony regarding the truth or falsity of a witness' testimony is prohibited, but expert testimony regarding police techniques used in a particular interrogation is not generally prohibited. *See also Miller*, 770 N.E.2d at 773.

Despite this precedent, O'Connor did not challenge the exclusion of Dr. Olvera's opinion testimony regarding the coercive techniques Detective Norris used to obtain Carew's confession. During the offer to prove, Dr. Olvera testified that Detective Norris used techniques during Carew's interview that would increase the likelihood of a false confession from someone with an IQ in the range of Carew, such as implying that the crime was not very serious; suggesting that if Carew confessed to the crime, the penalties would be lighter; and telling Carew that the police had DNA evidence proving that he molested his daughter when in fact they had no such evidence. Under *Callis*, this testimony would have been admissible in Carew's trial as it concerned the police techniques used in Carew's interview and could have

affected the weight the jury gave to Carew's confession.

■■ The dissent, however, believes that Dr. Olvera's opinion testimony that Detective Norris used techniques during Carew's interview that would increase the likelihood of a false confession from someone with an IQ in Carew's range would be inadmissible in evidence at trial pursuant to Indiana Evidence Rule 704(b).[5] However, the dissent believes that testimony regarding whether such techniques would coerce Carew into making an involuntary confession would be admissible. Although we agree with the dissent that Evidence Rule 704(b) prohibits specific opinion testimony that an individual's confession was false, we differ with the dissent in that Rule 704(b) does not prohibit general opinion testimony that coercive police techniques could increase the likelihood of a false confession from an individual with diminished intellectual functioning.

In *Callis,* Dr. Ofshe testified generally about false confessions. On appeal, this Court concluded "that the trial court properly admitted [Dr.] Ofshe's testimony regarding the phenomenon of coerced confessions and properly excluded his opinion about Callis's interrogation." 684 N.E.2d at 239. *Callis* itself stands for the proposition that opinion testimony concerning false confessions is admissible in evidence at trial. Such an approach only makes sense. Although the dissent observes that Detective Norris' interview techniques and Carew's IQ were before the jury, an expert's opinion is helpful to the jury to tie up the relationship between the police interview techniques and individuals with diminished intellectual functioning, which is outside the common knowledge and experience of jurors. Accordingly, we conclude that Dr. Olvera's opinion testimony would have been admissible at Carew's trial pursuant to *Callis.*[6]

In light of the precedent available at the time of Carew's direct appeal, Casanova's extraordinary efforts to preserve this issue for appeal—including making two offers to prove and contacting the appellate division about this very issue—and his coordination of the defense of Carew with that of Miller—whose appellate attorney raised this issue on direct appeal—O'Connor's decision not to challenge the trial court's exclusion of Dr. Olvera's testimony was not reasonable. Accordingly, we conclude that O'Connor rendered deficient performance. We must now determine whether O'Connor's deficient performance prejudiced Carew.

■ Given the facts of this case, this inquiry is relatively easy to answer. While O'Connor chose not to challenge the exclusion of the expert opinion testimony, Miller's appellate attorney did raise this issue on direct appeal. As a result, Carew's convictions were affirmed on direct appeal, but Miller received a new trial. Although this case and *Miller* are not identical, they are similar enough to convince us that had O'Connor raised this issue on direct ap-

---

5. Indiana Evidence Rule 704(b) provides, "Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions."

6. This conclusion is further bolstered by *Miller,* in which our supreme court held that "Dr. Ofshe's testimony would have assisted the jury regarding the psychology of relevant aspects of police interrogation and the interrogation of mentally retarded persons, topics outside common knowledge and experience." 770 N.E.2d at 774. We reiterate the supreme court's warning in *Miller* that if on retrial, Dr. Olvera attempts to testify regarding whether Carew's confession was false and the State objects, the trial court should sustain such an objection. *See id.*

peal, there is a reasonable probability that the result of Carew's direct appeal would have been different. We now examine *Miller.*

Miller was tried at approximately the same time as Carew. Miller, who had an IQ of 67 and was therefore considered mentally retarded, was charged with murder and criminal deviate conduct in connection with the 1995 death of a seventy-one-year-old woman who had been beaten, sexually attacked, and strangled to death. Eventually, Miller confessed to the crimes. At trial, Miller's attorney sought to introduce the testimony of Dr. Richard Ofshe, the same psychologist who testified in Callis' trial, but the trial court excluded it. In an offer to prove, Dr. Ofshe explained that his testimony would address how police interrogation techniques may lead to a false confession. Specifically, Dr. Ofshe testified that the interrogating police officer employed several deceptive tactics in securing Miller's confession, such as implying that the police had evidence which they may or may not have had and underestimating the seriousness of the crime by suggesting that the victim's death could have been an accident. Dr. Ofshe explained that mentally handicapped individuals are more likely to give a false confession for a variety of reasons. Miller was subsequently convicted as charged.

On appeal, Miller challenged the exclusion of Dr. Ofshe's testimony. Our supreme court first observed that expert testimony is appropriate when it addresses issues not within the common knowledge and experience of ordinary persons and would aid the jury. *Miller,* 770 N.E.2d at 773. The court then extensively analyzed *Callis* and stated, "We understand *Callis* to prohibit expert opinion testimony re-

garding the truth or falsity of one or more witnesses' testimony, but it does not generally prohibit expert testimony regarding police techniques used in a particular interrogation." *Id.* Based on *Callis,* the court concluded:

> From our review of the circumstances in the present case, the general substance of Dr. Ofshe's testimony would have assisted the jury regarding the psychology of relevant aspects of police interrogation and the interrogation of mentally retarded persons, topics outside common knowledge and experience. In the event that some of Dr. Ofshe's testimony to the jury would have invaded Rule 704(b)'s prohibition of opinion testimony as to the truth or falsity of the defendant's statements, the trial court could have sustained individualized objections at trial. We hold that excluding the proffered expert testimony in its entirety deprived the defendant of the opportunity to present a defense.

*Id.* at 773–74. The supreme court ordered a new trial for Miller. *Id.* at 774.

Although this case and *Miller* are not identical, the issue is substantially the same, which is not surprising considering that Casanova chose to coordinate Carew's defense with that of Miller: whether the trial court erred in excluding expert opinion testimony regarding coercive police tactics used in the interrogation of an individual with diminished intellectual functioning. The *Miller* court, relying extensively on *Callis,* concluded that the exclusion of such testimony deprived the defendant of the opportunity to present a defense and ordered a new trial. *Id.* at 774. In light of the result in *Miller,*[7] had O'Connor challenged the trial court's ex-

---

7. Unlike the State in *Miller,* here the State does not argue that the exclusion of Dr. Olv-

era's testimony constitutes harmless error.

clusion of Dr. Olvera's opinion testimony on direct appeal, there is a reasonable probability that Carew's convictions would have been reversed. Accordingly, we conclude that O'Connor's deficient performance prejudiced Carew. Although we rarely find that appellate counsel is ineffective, based on the circumstances present here, we are convinced that this is one such case. We therefore reverse the denial of Carew's petition for post-conviction relief and remand this case for a new trial.

Reversed.

MAY, J., concurs.

SULLIVAN, J., dissents with separate opinion.

SULLIVAN, Judge, dissenting.

The offer to prove as to Olvera's testimony related principally to police interrogation techniques as such techniques "would increase the likelihood of a *false* confession." Op. at 284 and 287 (emphasis supplied). This is a different issue than whether such techniques would so coerce or intimidate as to make a confession *involuntary*. To this extent the offer was directed to an opinion of Dr. Olvera which would be inadmissible in evidence.

I agree that Dr. Olvera's proffered testimony as to the likelihood of an *involuntary* confession would not have been prohibited by *Callis v. State*, 684 N.E.2d 233 (Ind.Ct.App.1997), *trans. denied.* This is so because such testimony would bear upon the weight which the jury might choose to give to the confession. But the proffered testimony was not solely of that nature. It strongly targeted whether or not the confession was false.

Mr. Casanova, the trial attorney, in his introduction to the offer to prove from Dr. Olvera, specifically stated that it was the intention to elicit Dr. Olvera's "opinion on the *voluntariness* of the confession." Transcript at 661 (emphasis supplied). Later, during the offer to prove itself Mr. Casanova specifically advised the court that he had "another proffer ... regarding the *voluntariness* of the confession ..." Tr. at 689 (emphasis supplied). Dr. Olvera in his proffer did state that in his opinion Mr. Carew's statement "was not voluntary in the sense that it was not made intelligently or knowingly." Tr. at 695. Dr. Olvera should have been permitted to give that opinion to the jury. However, Mr. Casanova crossed over the boundary between voluntariness and falsity when he obtained an affirmative response to his question as to whether the police interrogation tactics "would increase the likelihood of a *false confession* from someone having an IQ in the range of Mr. Carew." Tr. at 692 (emphasis supplied).

For this reason I do not agree with my colleagues that Mr. O'Connor rendered ineffective assistance of counsel for failing to challenge the trial court's exclusion of Dr. Olvera's testimony as it was represented in the offer to prove before the trial court. I am of the view that Mr. O'Connor's explanation of not wanting "to bog down the record" was legitimate strategy. Tr. at 13.

The matter of the police interrogation tactics and technique were before the court and the jury, as was Carew's IQ as testified to by Dr. Olvera. O'Connor was justified in concluding that those factors would "carry the day" as to the permissible inference which could be drawn by the jury as to voluntariness. Tr. at 13. He also made a reasonable strategic decision not to cloud up the voluntariness issue by Olvera's proffered testimony which focused upon whether the confession was likely to be false rather than whether it was involuntary. He very specifically noted the distinction between an involuntary and a false confession.

I would affirm the denial of post-conviction relief.