**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 26 2012, 9:08 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ERIN L. BERGER**
Evansville, Indiana

ATTORNEY FOR APPELLEE:

**ROBERT J. HENKE**
Indiana Department of Child Services
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| A.J., | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 82A01-1111-JT-529 |
| | ) | |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE VANDERBURGH SUPERIOR COURT
The Honorable Renee Allen Ferguson, Magistrate
Cause No. 82D01-1103-JT-45

**July 26, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**

A.J. ("Mother") appeals the involuntary termination of her parental rights to her child claiming there is insufficient evidence supporting the trial court's judgment. We affirm.

**FACTS AND PROCEDURAL HISTORY**

Mother is the biological mother of K.J., born in June 2010.[1] The facts most favorable to the trial court's judgment reveal that within several days of K.J.'s birth the local Vanderburgh County Office of the Indiana Department of Child Services ("VCDCS") took the child into emergency protective custody and filed a petition alleging that K.J. was a child in need of services ("CHINS") because the child was born testing positive for cocaine. At the time, Mother had also tested positive for, and confirmed using, both cocaine and marijuana before K.J. was born.

During a subsequent hearing on the matter, Mother admitted to the allegations of the CHINS petition, and K.J. was so adjudicated. On August 3, 2010, the trial court conducted a dispositional hearing. Mother appeared for the hearing and was represented by counsel. Following the hearing, the trial court judge signed a dispositional order formally removing K.J. from Mother's care and custody and awarding VCDCS wardship of the child. According to the trial court's Chronological Case Summary ("CCS"), the trial court's dispositional order, which was signed on August 3, 2010, was thereafter "filed" on August 19, 2010. Appellant's App. at 2.

---

[1] K.J.'s biological father is unknown and thus does not participate in this appeal. We therefore limit our recitation of the facts to those pertinent solely to Mother's appeal.

The trial court's dispositional order also incorporated a Parental Participation Plan directing Mother to participate in and successfully complete a variety of tasks and services, such as parenting classes and regular supervised visitation with K.J., designed to improve her parenting abilities and to facilitate reunification with K.J. Although Mother initially participated in several court-ordered services including a substance abuse evaluation and treatment program, after approximately two months her participation became sporadic and was ultimately unsuccessful. Mother also continued to struggle with irrational thought processes, lack of motivation, and limited functioning in many areas of her life due to her struggle with schizophrenia. Mother also eventually stopped attending scheduled supervised visits with K.J.

On March 15, 2011, VCDCS filed a petition seeking the involuntary termination of Mother's parental rights to K.J. An evidentiary hearing on the termination petition was held on July 21, 2011. During the termination hearing, VCDCS presented significant evidence concerning Mother's unimproved circumstances, refusal to consistently participate in reunification services, and inability to demonstrate she is capable of caring for K.J. and sufficiently providing for the child's basic needs. VCDCS also presented evidence establishing K.J. was happy and thriving in a pre-adoptive foster home. At the conclusion of the hearing, the trial court took the matter under advisement. On September 27, 2011, the trial court issued its order terminating Mother's parental rights to K.J. Mother now appeals.

**DISCUSSION AND DECISION**

Mother does not challenge the sufficiency of the evidence supporting any of the trial court's specific factual findings. Rather, Mother's sole argument on appeal is that VCDCS failed to satisfy the statutory requirements of Indiana Code section 31-35-2-4(b)(2)(A). Mother therefore contends she is entitled to reversal.

Before parental rights may be involuntarily terminated, the State must allege and prove, by clear and convincing evidence, each element contained in Indiana Code section 31-35-2-4(b). In re G.Y., 904 N.E.2d 1257, 1260-61 (Ind. 2009); see also Ind. Code Ann. § 31-37-14-2. Subsection (b)(2)(A) of Indiana's termination statute provides that an involuntary termination petition "must allege" that one of the following is true:

(i)     The child has been removed from the parent for at least six (6) months under a dispositional decree.

(ii)    A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required . . . .

(iii)   The child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the last twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child[.]

I.C. § 31-35-2-4(b)(2)(A). Because parents have a constitutionally protected right to establish a home and raise their children, see e.g. M.L.B. v. S.L.J., 519 U.S. 102, 116, 117 S. Ct. 555, 564 (1996), the Indiana Department of Child Services "must strictly comply with the statute terminating parental rights," Platz v. Elkhart Cnty. Dep't of Pub. Works, 631 N.E.2d 16, 18 (Ind. Ct. App. 1994); see also In re J.S., 906 N.E.2d 226 (Ind.

Ct. App. 2009). However, if the trial court finds that the allegations in a termination petition are not true, the court *shall* dismiss the petition. Ind. Code § 31-35-2-8(a).

Here, Mother asserts that VCDCS failed to satisfy the statutory requirements of Indiana Code section 31-35-2-4(b)(2)(A) of Indiana's termination statute because the "dispositional decree was entered into the [trial] court's [order] book on September 23, 2010," and VCDCS filed its involuntary termination petition on March 15, 2011. Appellant's Brief at 2. Mother therefore contends that she is entitled to reversal because "[s]ix (6) months had not passed from the time the dispositional decree was placed in the trial court's [o]rder [b]ook before [VCDCS] filed its Petition To Terminate Parental Rights." Id. at 2-3. Mother's argument is unavailing.

Indiana Trial Rule 77(B) provides:

> For each case, the clerk of the circuit court shall maintain a sequential record of the judicial events in such proceeding. . . . Notation of judicial events in the Chronological Case Summary shall be made promptly, and shall set forth the date of the event and briefly define any documents, orders, rulings, or judgments filed or entered in the case. . . . The Chronological Case Summary shall be an official record of the trial court and shall be maintained apart from other records of the court and shall be organized by case number.

Moreover, we have previously acknowledged that a trial court's CCS is an "official record of the trial court," and that a trial court "speaks through its docket." Gibson v. State, 910 N.E.2d 263, 267 (Ind. Ct. App. 2009); see also City of Indianapolis v. Hicks, 932 N.E.2d 227, 232 (Ind. Ct. App. 2010) (stating that the CCS meets the general requirements for a valid memorial of the actions taken by a trial court).

5

Here, it is undisputed that the trial court's dispositional order was signed by the trial court judge on August 3, 2010. According to the CCS, the dispositional order was thereafter "filed" on August 19, 2010. VCDCS did not file its involuntary termination petition until March 15, 2011, approximately seven months later. Under the circumstances of this case, the fact that the dispositional order was not placed in the trial court's order book until September 23, 2010 is of no moment. See Benson v. State, 780 N.E.2d 413, 420 (Ind. Ct. App. 2002) (stating that entry of judgment in court's order book is merely ministerial function of trial clerk and CCS is official record of the trial court), trans. denied.

Judgment affirmed.

RILEY, J., and KIRSCH, J., concur.