## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 09 2015, 10:09 am

CLERK
of the supreme court,
court of appeals and
tax court

| APPELLANT PRO SE | ATTORNEYS FOR APPELLEE |
|---|---|
| Henry Lee Shell, Jr.<br>Bunker Hill, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana |
| | Eric P. Babbs<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Henry Lee Shell, Jr.,<br>*Appellant-Petitioner,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Respondent* | December 9, 2015<br><br>Court of Appeals Case No.<br>52A02-1504-PC-261<br><br>Appeal from the Miami Circuit Court<br><br>The Honorable Timothy P. Spahr<br><br>Trial Court Cause No.<br>52C01-1210-PC-8 |

**Vaidik, Chief Judge.**

# Case Summary

Henry Shell, Jr. was convicted of theft and dealing in methamphetamine (manufacturing) following a jury trial. He appealed that conviction unsuccessfully and filed a subsequent petition for post-conviction relief. Following an evidentiary hearing, his petition was denied, and he now appeals that decision. Finding no ineffective assistance of either trial or appellate counsel, we affirm the denial of his post-conviction relief petition.

# Facts and Procedural History

The facts underlying Shell's conviction were set forth in the memorandum decision issued on direct appeal as follows:

> Crop Production Services, a Miami County company, requested police assistance regarding theft from its anhydrous ammonia tanks. The Indiana State Police established a surveillance team and posted officers throughout CPS's remotely located facility. There were approximately eight officers involved in this surveillance operation, which included the use of night-vision goggles and thermal imaging.
>
> A little after 1:00 a.m. on January 14, 2010, a pickup truck pulled up to CPS's anhydrous ammonia storage facility, and one person exited the truck. The officers did not see the person, who was wearing Carhartt-type clothing, carrying anything at this time. The person entered the fenced-in yard of the facility, quickly filled a pitcher with anhydrous ammonia, and ran out of the yard. The officers observed vapors rising from both the tank and the pitcher. The person then squatted down by a utility pole, set the pitcher down, and waited for a few minutes. The truck

returned, picked up the person, and left. The officers followed and stopped the truck. There were four people inside the truck, including Shell. Shell, however, was the only person wearing Carhartt-type clothing, and an officer smelled a strong odor of anhydrous ammonia on his clothing. In addition, according to one of the occupants of the truck, they dropped off Shell at CPS's anhydrous ammonia storage facility and later returned to get him. Because no anhydrous ammonia was found in the truck, the officers returned to the utility pole where they had seen the person crouching and found the pitcher, which contained anhydrous ammonia and other ingredients used to manufacture methamphetamine, specifically, lithium and pseudoephedrine. The ingredients were in the beginning stages of manufacturing. The contents of the pitcher were later analyzed and determined to contain methamphetamine.

*Shell v. State*, No. 52A04-1107-CR-370, 2012 WL 1655164, at \*1 (Ind. Ct. App. May 9, 2012), *trans. denied*.

[3] The State charged Shell with Class B felony dealing in methamphetamine (manufacturing) and Class D felony theft. A jury trial was held in May 2011. During the trial, counsel unsuccessfully attempted to suppress all evidence resulting from the stop of the truck in which Shell was riding. Tr. p. 226-31. Also during the trial, Joni Espenschied, who was in the truck, high on methadone, and was arrested with Shell, testified that Shell got out of the truck and, after some time had passed, the truck stopped again to collect Shell from the side of the road. *Id.* at 269. She further testified that Shell was wearing a coat which matched the description given by the officers who observed the anhydrous ammonia theft. *Id.* at 275.

[4]    Shell was convicted as charged.  The trial court sentenced Shell to fourteen years for dealing in methamphetamine and three years for theft, to be served concurrently.  Shell appealed, arguing that there was insufficient evidence to support his conviction, and that the trial court abused its discretion by refusing to give two of his tendered final jury instructions.  *Shell*, 2012 WL 1655164, at *2.  This Court affirmed the trial court.  *Id.* at *4.

[5]    Shell filed his initial petition for post-conviction relief in October 2012, and an amended petition in September 2014.  In his amended petition, he sought relief for ineffective assistance of both trial and appellate counsel, due process violations, a violation of the confrontation clause, and a violation of Indiana Code section 35-38-7-5.

[6]    The Post-Conviction Relief court (PCR court) held an evidentiary hearing and subsequently issued its findings of fact and conclusions of law, along with an order denying Shell's petition on March 30, 2015.  Shell now appeals.

# Discussion and Decision

[7]    Defendants who have exhausted the direct appeal process may challenge the correctness of their convictions and sentences by filing a post-conviction petition.  *Stevens v. State*, 770 N.E.2d 739, 745 (Ind. 2002).  Post-conviction proceedings are not an opportunity for a super appeal.  *Timberlake v. State*, 753 N.E.2d 591, 597 (Ind. 2001).  Rather, they create a narrow remedy for subsequent collateral challenges to convictions which must be based on grounds

enumerated in the post-conviction rules. Ind. Post-Conviction Rule 1(1); *Timberlake*, 753 N.E.2d at 597. In post-conviction proceedings, complaints that something went awry at trial are cognizable only when they show deprivation of the right to effective counsel or issues demonstrably unavailable at the time of trial or direct appeal. *Sanders v. State*, 765 N.E.2d 591, 592 (Ind. 2002).

[8] Post-conviction petitions for relief are civil proceedings, requiring the petitioner to prove his claims by a preponderance of the evidence. *Stevens,* 770 N.E.2d at 745. We review the post-conviction court's legal conclusions de novo, but accept its factual findings unless they are clearly erroneous. *Id.* at 746. The petitioner must establish that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the PCR court. *John Smith v. State*, 770 N.E.2d 290, 295 (Ind. 2002).

[9] Initially we note that Shell is appealing pro se. Pro se litigants without legal training are held to the same standard as trained counsel and are required to follow procedural rules. *Eric Smith v. State*, 38 N.E.3d 218, 220 (Ind. Ct. App. 2015). Shell raises four issues in his appeal which we consolidate to two cognizable issues: (1) ineffective assistance of trial counsel; and (2) ineffective assistance of appellate counsel.

[10] We review claims of ineffective assistance of trial counsel under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). The defendant must show that trial counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms and that there is a

reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Moody v. State*, 749 N.E.2d 65, 67 (Ind. Ct. App. 2001), *trans. denied*.

Counsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption. *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000). We will not speculate as to what may or may not have been advantageous strategy. *Whitener v. State*, 696 N.E.2d 40, 42 (Ind. 1998). Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference on appeal. *Wrinkles v. State*, 749 N.E.2d 1179, 1195 (Ind. 2001).

# I. Ineffective Assistance of Trial Counsel

Shell contends that his trial counsel was ineffective because counsel failed to: 1) suppress evidence gathered as a result of the *Terry* stop of the truck, and from the pitcher left by the side of the road; 2) impeach three witnesses; and 3) timely tender preliminary jury instructions. Shell also argues that the cumulative effect of the alleged errors amounted to ineffective assistance of counsel.

## A. Failure to Suppress Evidence

Shell first argues that trial counsel should have filed a pre-trial motion to suppress the evidence gathered in the stop and search of the truck, and the pitcher which was subsequently found on the side of the road by the utility

pole.[1]  To prevail on an ineffective assistance of counsel claim based upon failure to file motions, the defendant must demonstrate that such motions would have been successful.  *Moore v. State*, 872 N.E.2d 617, 621 (Ind. Ct. App. 2007), *trans. denied*.

[14]  First, we note that Shell's trial counsel did make an oral motion to suppress the evidence during the trial and it was denied.  Tr. p. 226-31.  Our review of the evidence reveals that the stop of the truck in which Shell was riding was proper, and the pitcher left on the side of a public highway was abandoned and, therefore, subject to seizure without a warrant.

[15]  Beginning with the stop of the truck, police officers may briefly detain a person for investigatory purposes if they have reasonable suspicion that criminal activity may be afoot.  *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968).  In evaluating the legality of a *Terry* stop, we consider "the totality of the circumstances—the whole picture."  *United States v. Cortez*, 449 U.S. 411, 417 (1981).  The reasonable-suspicion requirement is satisfied for Fourth Amendment analysis where the facts known to the officer at the moment of the stop, together with the reasonable inferences arising from such facts, would cause an ordinarily

---

[1] Shell also raises the admission of evidence resulting from the stop and search of the truck in which he was riding and the seizure of the pitcher as free-standing error.  Appellant's Br. p. 19.  "A defendant in a post-conviction proceeding may allege a claim of fundamental error only when asserting either (1) '[d]eprivation of the Sixth Amendment right to effective assistance of counsel,' or (2) 'an issue demonstrably unavailable to the petitioner at the time of his [or her] trial and direct appeal.'"  *Lindsey v. State*, 888 N.E.2d 319, 325 (Ind. Ct. App. 2008) (quoting *Canaan v. State*, 683 N.E.2d at 235 n. 6 (Ind. 1997) (alteration in original)), *trans. denied*.  Therefore, we will not address Shell's free-standing claims of fundamental error.  We will, however, address those issues in the context of ineffective assistance of trial counsel.

prudent person to believe that criminal activity has occurred or is about to occur. *Gipson v. State*, 459 N.E.2d 366, 368 (Ind. 1984). Additionally, because Shell raises Article 1, Section 11 of the Indiana Constitution, reasonableness under that provision is determined by balancing "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005).

[16]    Here, officers stopped the truck Shell was riding in because, at a little after 1:00 in the morning, several police officers observed a person get out of a truck, run across a field, enter CPS's property, remove anhydrous ammonia from a tank, and return to the road. A short time later, the truck returned and stopped, and it appeared that the person who had taken the anhydrous ammonia reentered the truck. These facts are sufficient to warrant a *Terry* stop of the truck under both the Fourth Amendment and the Indiana Constitution.

[17]    As to the pitcher containing the temporary methamphetamine lab left by the utility pole, Shell contends that evidence of the lab should have been suppressed because it was a mile and a half away from Shell when he was arrested. The pitcher was left on the side of a public highway. Neither the Fourth Amendment nor the Indiana Constitution afford any protection for items abandoned in a public location. *See California v. Hodari D.*, 499 U.S. 621, 629 (1991); *Gooch v. State*, 834 N.E.2d 1052, 1053 (Ind. Ct. App. 2005) (providing

that "abandoned property is subject to lawful seizure without a warrant"), *trans. denied*.

[18] Shell has supplied no evidence that suggests an additional pre-trial motion and hearing on the constitutionality of the searches and seizures in this case would have produced a different outcome. We find no error.

## B. Failure to Impeach Witnesses

[19] Shell next argues that his trial counsel was ineffective because he failed to impeach three witnesses. To prove that failure to elicit impeaching testimony on cross-examination was ineffective assistance of counsel, the petitioner must demonstrate a reasonable probability that, but for counsel's deficient cross-examination, he would have been found not guilty. *Johnson v. State*, 675 N.E.2d 678, 686 (Ind. 1996).

[20] Beginning with Joni Espenschied, Shell contends that trial counsel failed to impeach her testimony during cross-examination by not forcing her to elaborate on her use of methadone. However, the fact that she was intoxicated at the time of the arrest was covered by the prosecutor during direct examination. "[W]ere you doing drugs that night?" Tr. p. 270. "I was under the influence of methadone. It's prescribed to me, but it's a large amount." *Id.* Given that the jury heard she was under the influence of methadone at the time of the crime, there is not a reasonable probability that the jury would have reached a different conclusion had that fact been repeated on cross-examination.

[21] Shell next argues that the testimony of Indiana State Police Officer Josh Maller, one of the officers who participated in the surveillance of the CPS facility and Shell's arrest, gave trial testimony that was inconsistent with other evidence and that trial counsel should have impeached him with the other evidence. Specifically, Officer Maller testified at trial that the suspect ran "diagonally northeast from the fence directly to the pole described." *Id.* at 222. He further testified at trial that he could not see which side of the truck the suspect got into, he "could just tell that he went up to the cab and entered it." *Id.* at 223. Shell, once again, has failed to demonstrate a reasonable probability that, but for counsel's cross-examination on these two points, he would have been found not guilty. Officer Maller testified that he saw a person dressed like Shell take the ammonia, run back to the road near the utility pole, and then a truck stopped near that location. Shell was subsequently found in that pick-up truck. He was the only one wearing similar clothing, and he smelled of ammonia. We see no reasonable probability that impeaching either of these details from Officer Maller's testimony would have changed the verdict.[2]

[22] Finally, Shell argues that trial counsel was ineffective because he did not impeach Indiana State Police Sergeant Robert Land's testimony about his distance from the scene by holding a ruler to the scaled picture and forcing Sergeant Land to calculate the distance more precisely. Sergeant Land, who

---

[2] Shell also argues that the inconsistencies between Officer Maller's testimony and his out of court statements might negate probable cause for the search. Again, the search was based on the *Terry* exception to the warrant requirement which does not require probable cause.

was among the officers assigned to the surveillance of CPS on the night Shell was arrested, testified that he was approximately 150 yards from the anhydrous ammonia facility. *Id.* at 315. Trial counsel had another witness, who worked at CPS, use a ruler to calculate the distance to Officer Land's position and he testified that Officer Land's location was closer to 3500 feet away from the facility. *Id.* at 161. Trial counsel highlighted this discrepancy in his closing argument. *Id.* at 352. Additionally, trial counsel elicited testimony on cross-examination of Sergeant Land that he was too far away to see the person who got out of the truck clearly enough to offer a description or identification—whether that distance was 150 yards or 3500 feet. *Id.* at 316. Shell fails to explain how a different presentation of Officer Land's location, or the dispute over the distance of Officer Land's location from the anhydrous ammonia tank, would have led to a different result.

## C. Untimely Tender of Preliminary Instructions

[23] Shell next argues that trial counsel tendered preliminary jury instructions after the deadline set by the trial court and that he was prejudiced by trial counsel's untimeliness.[3] His only argument is that trial counsel submitted the preliminary instructions too late. Shell is correct that counsel tendered preliminary instructions after the court's deadline, but Shell still must show that but for counsel's untimeliness, there is a reasonable probability that he would have

---

[3] This issue is not to be confused with the two final jury instructions that appellate counsel raised and were addressed on Shell's direct appeal.

been found not guilty. *See Benefield v. State*, 945 N.E.2d 791, 805 (Ind. Ct. App. 2011), *trans. denied*.

[24] Our review of the transcript reveals that the trial court did review and consider the two preliminary jury instructions proffered by Shell's counsel, even though they were untimely. Tr. p. 8-9. However, the court ultimately used its own preliminary instructions, which were taken directly from the pattern jury instructions. Shell has not met his burden of showing he would have been found not guilty but for trial counsel's untimely tendering of preliminary jury instructions.

## D. Cumulative Errors

[25] Finally, Shell argues that the cumulative effect of trial counsel's errors constituted ineffective assistance of counsel. While the individual errors of counsel may not be sufficient to prove ineffective representation, the cumulative effect of a number of errors can render counsel's performance ineffective. *Grinstead v. State*, 845 N.E.2d 1027, 1036 (Ind. 2006). However, "irregularities which standing alone do not amount to error do not gain the stature of reversible error when taken together." *Kubsch v. State*, 934 N.E.2d 1138, 1154 (Ind. 2010) (citation omitted). We find no error, cumulative or otherwise, in trial counsel's performance.[4]

---

[4] Shell contends the trial court abused its discretion in not granting his PCR petition, thereby violating his right to due process and equal protection of the laws. He makes no cogent argument, and so his claim is waived. *Wingate v. State*, 900 N.E.2d 468, 475 (Ind. Ct. App. 2009) (citation omitted); *see also* Ind. Appellate

# II. Ineffective Assistance of Appellate Counsel

[26] Shell argues next that he received ineffective assistance of appellate counsel. The standard of review for a claim of ineffective assistance of appellate counsel is the same as for trial counsel: the defendant must show that appellate counsel was deficient in his performance and that this deficiency resulted in prejudice. *Ben-Yisrayl,* 729 N.E.2d at 106. The two elements—deficient performance and prejudice—are separate and independent inquiries. The failure to satisfy either component will cause an ineffective assistance of counsel claim to fail. *Taylor v. State*, 840 N.E.2d 324, 331 (Ind. 2006). In addition, we note that ineffective assistance of appellate counsel claims generally fall into three categories: (1) denying access to the appeal; (2) waiver of issues; and (3) failure to present issues well. *Carew v. State*, 817 N.E.2d 281, 286 (Ind. Ct. App. 2004), *trans. denied*. We employ a two-part test to evaluate waiver of issue claims: (1) whether the unraised issue is significant and obvious from the face of the record and (2) whether the unraised issue is "clearly stronger" than the raised issues. *Little v. State*, 819 N.E.2d 496, 506 (Ind. Ct. App. 2004), *trans. denied*. Ineffectiveness is rarely found when the issue is the failure to raise a claim on direct appeal because the decision of what issue or issues to raise on appeal is

---

Rule 46(A)(8) (requiring that contentions in appellant's briefs be supported by cogent reasoning and citations to authorities, statutes, and the appendix or parts of the record on appeal). Waiver notwithstanding, the issues he appears to be raising are derivative of his ineffective assistance of counsel claim and have no merit.

one of the most important strategic decisions made by appellate counsel. *Carew*, 817 N.E.2d at 286.

[27] Shell contends that his appellate counsel was ineffective because he failed to argue that the initial *Terry* stop of the truck and the search and seizure of the pitcher left by the side of the road were unconstitutional, particularly because appellate counsel only used half of the available word limit on the appellate brief; essentially, Shell contends that there was space for one more issue. Appellant's Br. p. 21.

[28] This is derivative of Shell's claim of ineffective assistance of trial counsel for failure to suppress evidence. Again, the stop and search of the truck, and the seizure of the pitcher were proper; therefore, Shell cannot now show that the unraised issues were "clearly stronger" than the issues raised by appellate counsel. Accordingly, Shell has not demonstrated that he was denied the effective assistance of appellate counsel.

[29] We find that Shell has failed to establish that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the PCR court on any of the issues raised.

[30] Affirmed.

Robb, J., and Pyle, J., concur.