

**FILED**

Apr 07 2015, 6:01 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE

Mark M. Jervis
Carlisle, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ryan D. Johanningsmeier
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Mark M. Jervis,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

April 7, 2015

Court of Appeals Cause No.
87A05-1404-PC-171

Appeal from the Warrick Superior
Court.

The Honorable Robert R. Aylsworth,
Judge.

Cause No. 87D02-9707-PC-59

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Petitioner, Mark Jervis (Jervis), appeals the post-conviction court's denial of his petition for post-conviction relief.

We affirm.

## ISSUE

Jervis raises two issues on appeal which we consolidate and restate as the following single issue: Whether Jervis was denied effective assistance of trial and appellate counsel.

## FACTS AND PROCEDURAL HISTORY

We adopt the recitation of facts as set forth in Jervis's direct appeal as follows:

> On August 14, 1993, Terri Boyer went on a drinking spree with her husband, her brother and the brother's girlfriend. The four began in the early afternoon in Hatfield, their home town, and took the brother's truck to visit several bars, the last in Newburgh. In Newburgh, Boyer and her husband got into an argument that resulted in Boyer leaving the truck. The other three drove back to Hatfield, leaving an intoxicated Boyer to fend for herself. Just before 10 p.m. Boyer found her way to Frenchie's, a tavern in Newburgh, where she asked several patrons to give her a ride back to Hatfield. All refused. At some point, defendant Jervis entered the bar, met Boyer, and offered to take her to Hatfield. The two had no prior acquaintance.

> Jervis and Boyer were seen leaving the bar together some time around midnight, but no one actually saw them drive away in Jervis's car. Witness Terry Timberlake testified that he saw a car resembling Jervis's station wagon pull into the Newburgh Cinema parking lot around 11:30 p.m. Timberlake stated that two people, one male and one female, appeared to be in the car, but he could not positively identify them as Jervis and Boyer. Approximately thirty minutes later,

Timberlake saw the station wagon leave the Cinema parking lot and park in an adjacent lot of a daycare center where it remained for about ten minutes. It then returned to the Cinema parking lot, and finally drove away. Jervis returned to Frenchie's alone around 12:30 to 1:30 a.m. the same night, telling those present that he was unable to take Boyer to Hatfield because his car had broken down. Jervis went home a half hour later. At approximately 12:30 p.m. the next day, the owner of Newburgh Cinema found Boyer's body on a grass strip next to the Cinema parking lot. Boyer was nude below her waist and her bra and shirt were pushed up to her shoulders. An autopsy concluded that Boyer had been strangled and had died around midnight.

On September 5, 1993, Jervis was charged [] with Boyer's murder. The State's case against Jervis was largely circumstantial and included the following evidence: (1) an envelope, pencil and pen Boyer had been carrying in her purse were found in Jervis's trash can outside his apartment; (2) Boyer's driver's license and her daughter's library card were found in Jervis's car; and (3) DNA evidence established a strong likelihood that a blood stain on Jervis's shirt and a pubic hair found on his pants were Boyer's. Several witnesses also testified as to Jervis's whereabouts on the night in question. The jury was unable to reach a verdict in Jervis's first trial in 1994. The State retried Jervis in 1995 and a second jury convicted him.

[5] *Jervis v. State*, 679 N.E.2d 875, 876-77 (Ind. 1997). Jervis filed a direct appeal challenging his conviction. In that appeal, Jervis raised several issues relating to the admission of several pieces of evidence and jury misconduct. On May 12, 1997, our supreme court affirmed Jervis's conviction. *Id*. On March 18, 2003, Jervis filed his *pro se* petition for post-conviction relief and subsequently amended it on September 14, 2012. On October 1, 2013, the post-conviction court conducted Jervis's post-conviction hearing. Subsequently, both parties filed their proposed findings and conclusion of law, and on March 24, 2014, the post-conviction court denied Jervis's petition.

Jervis now appeals. Additional information will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

Under the rules of post-conviction relief, the petitioner must establish the grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1, § 5; *Strowmatt v. State*, 779 N.E.2d 971, 974-75 (Ind. Ct. App. 2002). To succeed on appeal from the denial of relief, the post-conviction petitioner must show that the evidence is without conflict and leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id.* at 975. The purpose of post-conviction relief is not to provide a substitute for direct appeal, but to provide a means for raising issues not known or available to the defendant at the time of the original appeal. *Id.* If an issue was available on direct appeal but not litigated, it is waived. *Id.*

### II. *Ineffective Assistance of Counsel*

Jervis contends that he was denied the effective assistance of both trial and appellate counsel. The standard by which we review claims of ineffective assistance of counsel is well established. In order to prevail on a claim of this nature, a defendant must satisfy a two-pronged test, showing that: (1) his counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Johnson v. State*, 832 N.E.2d 985, 996 (Ind. Ct. App. 2005) (citing *Strickland v.*

*Washington*, 466 U.S. 668, 690, 694 (1984) *reh'g denied*) *trans. denied*.  The two prongs of the *Strickland* test are separate and independent inquiries.  *Id.*  Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice  . . . that course should be followed."  *Timberlake, v. State*, 753 N.E.2d 591, 603 (Ind. 2001) (quoting *Strickland*, 466 U.S. at 697) *reh'g denied; cert. denied,* 537 U.S. 839 (2002).

[9] Counsel is afforded considerable discretion in choosing strategy and tactics and we will accord those decisions deference.  *Id.*  A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Id.*  The *Strickland* Court recognized that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client.  *Id.*  Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective.  *Id.*  Furthermore, we will not speculate as to what may or may not have been advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best.  *Johnson*, 832 N.E.2d at 997.

## A.  *Trial Counsel*

[10] According to Jervis, his trial counsel was ineffective in three respects: (1) counsel failed to recommend that he accept the State's plea deal, (2) counsel

failed to object to the State's destruction of evidence, and (3) counsel failed to move for mistrial due to jury bias.[1] We will address each issue in turn.

## 1. *Plea Negotiations*

[11] Jervis first argues that he would have accepted the State's plea offer limiting his sentence to forty years had he been offered meaningful consultation. During Jervis's post-conviction hearing, counsel stated that when he took the plea offer to Jervis, he explained the deal and left the decision to Jervis. Jervis argues that because the decision was left to him; counsel was ineffective and he was prejudiced within the meaning of the Sixth Amendment.

[12] We first note that the Sixth Amendment is an instrumental right designed to ensure a fair trial. Thus, "[t]he right to effective assistance of counsel extends to the consideration of plea offers that lapse or are rejected. That right applies to

---

[1] Jervis makes a fourth claim alleging that trial counsel was ineffective for failing to file a motion to dismiss after his first trial. Specifically, Jervis argues that because the State presented evidence that sperm cells were present in Boyer's mouth at his first trial, the State's objection to the admission of Jervis's evidence that he had a vasectomy should have supported a successful motion to dismiss the charges against him. Because Jervis fails to provide us with a cogent argument on this issue, it is waived. Ind. Appellate Rule 46(A)(8)(a). Moreover, we note that during Jervis's second trial, counsel asked the court to take judicial notice of the fact that Jervis underwent a vasectomy in 1990, which it did. Even with the admission of this evidence, the jury still convicted Jervis of murder.

all 'critical' stages of the criminal proceedings." *Montejo v. Louisiana*, 129 U.S. 2079, 2086 (2009).

[13]  In advancing his claim, Jervis states that the applicable standard for judging prejudice in the plea context is explained in *Hill v. Lockhart*, 474 U.S. 52, 61 (1985). In *Hill*, the United States Supreme Court held that the two-part test adopted in *Strickland* for evaluating claims of ineffective assistance of counsel applies to guilty-plea challenges based on ineffective assistance of counsel. *Id.* at 57. The language from *Hill*, standing alone, suggests that prejudice is a function of the outcome of the plea proceedings, *i.e.*, if the defendant would not have pleaded guilty but for the attorney's shortcomings, the prejudice prong of *Strickland* is satisfied. Notably, *Hill* stands for the proposition that a petitioner's guilty plea may be invalid if counsel provided incorrect advice pertinent to the plea. However, we do not find *Hill* controlling for the simple reason that the case at bar is not a challenge to a guilty plea. Rather in this instance, we rely on *Missouri v. Frye,* 132 S.Ct. 1399, 1409 (2012), and *Lafler v. Cooper*, 132 S.Ct. 1376, 1380 (2012), which both addressed issues of ineffective assistance of counsel based on improper or insufficient advice leading to the acceptance or rejection of a plea deal.

[14]  In *Frye*, the Supreme Court held that trial counsel performed deficiently by failing to inform Frye of a written plea offer before it expired. *Id.* However, the Supreme Court reversed the appeals court's holding that Frye had established prejudice and remanded because, even though Frye could show he would have accepted the plea offer, the appeals court failed to require Frye to show "a

reasonable probability [that] neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented." *Id*. at 1410. The *Frye* Court observed that there was "strong reason to doubt the prosecution and the trial court would have permitted the plea bargain to become final" because of an intervening event: Frye was arrested for a new offense. *Id*. at 1411.

[15] In *Lafler*, the Supreme Court determined that Lafler had demonstrated that but for counsel's deficient performance that led to the plea offer's rejection, there was a reasonable probability that he and the trial court would have accepted the guilty plea. *Id.* at 1380. As a result of not accepting the plea and being convicted at trial, the defendant received a sentence that was three and one -half times greater than he would have received under the plea. *Id*.

[16] Both *Frye* and *Lafler* involve a counsel's failure to convey a plea offer or affirmative advice to reject an offer. Nevertheless, *Lafler* and *Frye* seemingly require, as a general proposition, that the defendant show that he would have accepted the plea and that neither the State nor the trial court would have thwarted implementation of the defendant's plea agreement. Based on our examination of the record, we first note that Jervis fails to establish that he would have accepted the State's plea deal. The record shows that Jervis clearly and expressly, on many occasions, professed his innocence and had no intention of pleading guilty. From his second trial leading up to his direct appeal, Jervis advanced an innocence claim. During his post-conviction

hearing, Jervis maintained his theory of innocence and the following exchange occurred:

> [Court]: . . . Jervis, I believe in your post-conviction relief pleading that you filed with the court you are asking the court to grant you a new trial? Or, in the alternative, you're asking the court to let you accept the State's plea offer that they made apparently in 1995 of 40 years?
>
> [Jervis]: . . . [c]orrect.
>
> [Court]: Okay. And as you sit here today you still maintain your innocence . . .?
>
> [Jervis]: That's correct.
>
> [Court]: [] Indiana Law provides that the court cannot accept a guilty plea from someone unless that person admits his or her guilt . . .
>
> ****
> [Court]: So if [] you maintain your position of innocence it wouldn't matter if you were willing to plead guilty, I couldn't let you. You understand that?
> ****
> [Jervis]: I understand.

[17] (P-C Transcript pp. 76-77). Based on the foregoing dialogue, Jervis fails to establish that he would have accepted the State's plea deal. Moreover, it is also obvious from the transcript excerpt that the trial court would not have accepted Jervis's guilty plea over his protestation of innocence. Because Jervis has failed to show that he would have accepted the plea deal, and the fact that there is sufficient showing that the trial court would not have accepted Jervis's guilty plea, Jervis's claim of prejudice fails. Having established that Jervis was not

prejudiced by counsel, we need not inquire into whether counsel's performance was adequate. *See Thacker v. State*, 715 N.E.2d 1281, 1284 (Ind. Ct. App. 1999), *trans. denied*.

## 2. *Destruction of Evidence*

Next, Jervis argues that his trial counsel was ineffective for failing to object to the State's destruction of evidence that was potentially exculpatory. Without making any specific reference to the record, Jervis baldly asserts that he was denied access to the oral swabs taken from Boyer's mouth during his second trial and that the State destroyed the samples before he could have them retested. It is Jervis's ultimate contention that further testing of the oral swabs would have "uncovered the identity of another possible perpetrator, thereby exonerating" him. (Appellant's Br. p. 13).

At the outset of his claim, we find that Jervis has waived this argument by failing to present a cogent argument on this issue. Ind. Appellate Rule 46(A)(8)(a); *Moore v. State*, 869 N.E.2d 489, 491-92 (Ind. Ct. App. 2007). Waiver notwithstanding, we address his claim.

After reviewing the voluminous trial record, we discern that there were two oral swab taken from Boyer. Out of the two, only one oral swab was subjected to testing. The record shows that during Jervis's first trial, the technician who conducted the forensic analysis of the oral swab testified that when she examined it, she saw three sperm cells. At Jervis's second trial, her testimony changed after reexamining the sample under a powerful microscope and she

came to a conclusion that no sperm cells were present. The technician also explained that that the untested oral swab was set aside to allow for testing if "desired by the defense." (Tr. p. 2137).

At Jervis's post-conviction hearing, trial counsel testified that he did not believe the State destroyed any evidence without first providing access to it. In addition, the technician testified that the second swab was reserved for Jervis if he wanted to test it.

### 3. Failure to Move for Mistrial Due to Jury Misconduct

Jervis also argues that he received ineffective assistance of his trial counsel because he failed to move for a mistrial due to jury misconduct. On this claim, the State argues that Jervis's challenge to jury misconduct is barred by *res judicata* because he raised this issue on his direct appeal. We agree.

As a general rule, when a reviewing court decides an issue on direct appeal, the doctrine of *res judicata* applies, thereby precluding its review in post-conviction proceedings. *Ben-Yisrayl v. State*, 738 N.E.2d 253, 258 (Ind. 2000). The doctrine of *res judicata* prevents the repetitious litigation of that which is essentially the same dispute. *Sweeney v. State*, 704 N.E.2d 86, 94 (Ind. 1998). And, a petitioner for post-conviction relief cannot escape the effect of claim preclusion merely by using different language to phrase an issue and define an alleged error. *State v. Holmes*, 728 N.E.2d 164, 168 (Ind. 2000). "[W]here an issue, although differently designated, was previously considered and determined upon a criminal defendant's direct appeal, the State may defend

against defendant's post-conviction relief petition on grounds of prior adjudication or res judicata." *Cambridge v. State*, 468 N.E.2d 1047, 1049 (Ind. 1984).

[24]	Here, we note that this issue of jury misconduct was litigated during Jervis's direct appeal. Specifically, on direct appeal Jervis argued that the trial court erred in dismissing a juror from the case before deliberations. "Near the end of trial but before deliberations began, the bailiff informed the judge that a juror had told the bailiff during a lunch break that if the verdict did not turn out a 'certain way' the juror 'heard' there might be 'problems' for the jury." *Jervis*, 679 N.E.2d at 881. The trial court questioned the tainted juror who then expressed concern for his wife's safety. *Id*. Over Jervis's objection, the trial court replaced the juror with an alternate. *Id*.

[25]	Our supreme court affirmed the trial court's finding that it acted correctly in replacing a possibly tainted juror with an alternate. *Id*. Because Jervis's claim of jury misconduct was fully litigated on appeal, his efforts to redesignate and repackage it as an ineffective of assistance of trial counsel claim is barred by *res judicata.*

## B. *Appellate Counsel*

[26]	Jervis also contends that his appellate counsel was ineffective for failing to raise his own incompetence as a trial counsel on direct appeal. Jervis was represented by the same attorney at trial and on appeal. We first note that it is unreasonable to believe that appellate counsel would raise the question of his

own competency on appeal. *Askew v. State*, 500 N.E.2d 1219, 1220 (Ind.1986), *reh'g denied*; *Johnson v. State*, 674 N.E.2d 180, 184 (Ind. Ct. App. 1996), *reh'g denied, trans. denied*. We have previously noted the danger in being represented by the same counsel both at trial and on appeal. *Benson v. State*, 780 N.E.2d 413, 418 n.3 (Ind. Ct. App. 2002), *reh'g denied, trans. denied*.

[27] Our standard of review for claims of ineffective assistance of appellate counsel is the same as for trial counsel's ineffective assistance. *Fisher v. State*, 810 N.E.2d 674, 676 (Ind. 2004). Indiana law recognizes three basic categories for claims of appellate counsel's ineffectiveness: "(1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well." *Id*. at 677 (citing *Biehgler v. State*, 690 N.E.2d 188, 193-95 (Ind. 1997), *cert. denied*, 525 U.S. 1021 (1998)). Here, the second category is the only category applicable and will lead to a finding of deficient performance only when the reviewing court determines that the omitted issues were significant, obvious, and "clearly stronger than those presented." *Id*. at 194. (internal quotation marks omitted). "[T]he decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel." *Id*. at 193. (internal quotation marks omitted).

[28] We note that Jervis's appellate counsel unsuccessfully contested the admissibility of several pieces of evidence as well as jury misconduct. Nevertheless, Jervis argues that his appellate counsel should have raised his own incompetence—specifically his own failure to challenge the State's destruction of the evidence, and failure to raise jury misconduct—as grounds

for ineffective assistance of trial counsel. As discussed above, we determined that Jervis's unfounded assertion that the State destroyed the oral swab is without merit. As for the jury misconduct claim, we have already concluded that it is barred by *res judicata.* Here, Jervis has not demonstrated that appellate counsel's own failure to challenge the State's destruction of the evidence and failure to raise jury misconduct were "clearly stronger" than the issues raised by his appellate counsel. *See Bieghler*, 690 N.E.2d at 194.

[29] In light of the foregoing, we find that Jervis has not demonstrated that but for his appellate counsel's alleged error, there is a reasonable probability that the result of the proceeding would have been different. *See McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002). Therefore, we find that Jervis has failed to show that his appellate counsel's performance was deficient or that he was prejudiced as a result of counsel's performance.

## CONCLUSION

[30] Based on the above, we conclude that the post-conviction court properly denied Jervis's petition for post-conviction relief.

[31] Affirmed.

[32] Vaidik, C. J. and Baker, J. concur