## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 28 2016, 5:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Mario Joven
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

William Taylor,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

October 28, 2016

Court of Appeals Case No.
06A01-1511-PC-1876

Appeal from the Boone Circuit Court

The Honorable Matthew C. Kincaid, Special Judge

Trial Court Cause No.
06C01-1210-PC-380

**Pyle, Judge.**

# Statement of the Case

William Taylor ("Taylor") appeals the denial of his petition for post-conviction relief. He specifically contends that the post-conviction court erred in denying his petition because he received ineffective assistance of trial counsel when counsel failed to communicate a plea offer to him. Finding that Taylor has failed to show that he was prejudiced by trial counsel's deficient performance, and that the post-conviction court did not err in denying his petition, we affirm.

We affirm.

# Issue

The sole issue for our review is whether the post-conviction court erred in denying Taylor's petition for post-conviction relief.

# Facts

This Court set forth the facts in a memorandum decision in Taylor's direct appeal as follows:

> Taylor was N.H.'s stepfather, and he lived with her and her mother, S.H., in Boone County while N.H. was between the ages of five and eight. In 1999, N.H. first remembers Taylor coming into her room at night, climbing into her bed, and putting his hand down her pants underneath her underwear when she was about seven years old. Taylor would ask N.H. if she knew what a man's penis looked like and whether she liked what he was doing to her. Taylor committed these acts three or four times a week and continued to fondle N.H. even after her sister was born and sleeping in the same room.

The family moved to another house in Boone County in July 2001 when N.H. was in the fourth grade. While there, Taylor began putting his mouth on N.H.'s vagina and fondling her breasts.

Taylor would also make N.H. put her mouth on his penis. On Sundays, after S.H. left for work, Taylor would take N.H. into his bedroom, lock the door, and undress them both. Taylor would then force N.H. to either give or receive oral sex. When Taylor forced N.H. to give oral sex, he would ejaculate into her mouth. Taylor took N.H. into his bedroom two to three times a week.

Taylor once forced N.H. to kneel in the kitchen and put his penis into her mouth, choosing that location so that he could look out the windows to ensure that nobody came home. Taylor also continued to go into the room that N.H. shared with her younger sister and sexually fondle N.H. at night, while her sister was in the room.

Taylor would tell N.H. that he loved her and often apologized after molesting N.H. But a few days later, he would commit the same act and apologize yet again. The cycle continued this way for a long time.

When N.H. threatened to tell someone, Taylor laughed and told her that if she told anyone, he would go to prison and N.H.'s sister would grow up without a father, just like N.H. Taylor also told her that the family would not have any money and would lose their home.

When N.H. eventually told her mother, she contacted the police. Boone County Sheriff's Department Detective Thomas Beard and Indiana State Police Detective Jim Dungan took [then seventeen-year-old] N.H. to Suzy's Place, a child advocacy center, for a forensic interview on December 17, 2009. Detective Dungan worked cases in Hendricks County, and N.H. had indicated that some of the molestations had occurred there.

After the interview, N.H. called Taylor while Detectives Beard and Dungan recorded the conversation. During the telephone conversation, N.H. told Taylor that she had told her mother about the "oral stuff," and Taylor exclaimed, "I'm going, I'm in jail, I'm done. I'm dead." Tr. p. 594. He continued, "I'll go to prison for the rest of my life now ... I don't know why I did it, started anything with you." *Id.* at 595. Taylor told N.H. to tell her mother that "it was just that one (1) time and both of us has been sorry ever since, but we haven't done anything since. I'm in jail." *Id.* at 596. When N.H. stated that "it happened a lot," Taylor replied, "I know it and I'm sorry for everything." *Id.* Taylor attempted to explain to N.H. that he molested her because he "was in love with [her]" and "wanted to teach [her] what sex was supposed to be like...." *Id.* at 597–98.

After the telephone conversation, Detectives Beard and Dungan went to Taylor's apartment in Brownsburg to speak with him. And after speaking with the Hendricks County Prosecutor's Office regarding their criminal investigation, the detectives arrested Taylor and took him to the Hendricks County jail on December 17, 2009.

*Taylor v. State*, Cause Number 06A04-1104-CR-272, slip op. 2-4 (Ind. Ct. App. Dec. 20, 2011).

[4] Taylor was charged in Hendricks County with ten counts for the most recent offenses against N.H., including two counts of Class A felony child molesting, four counts of Class B felony sexual misconduct with a minor, two counts of Class C felony misconduct with a minor, Class C felony child molesting, and Class D felony child seduction. Based on the same investigation, in February 2010, the State charged Taylor in Boone County with one count of Class B felony child molesting based upon sexual deviate conduct, which had occurred

before the offenses charged in Hendricks County.  Taylor hired attorney Allen Lidy ("Lidy") to represent him in both cases.

[5]     In September 2010, Taylor wrote a letter to Lidy wherein he explained that he did not know how much longer he could "take being locked up" because of his blood pressure.  (Taylor's Ex. A).  Taylor asked Lidy why Boone County had only charged him with one Class B felony while Hendricks County had charged him with ten offenses, which included Class A, B, C, and D felonies, and whether there were discrepancies in N.H.'s and her mother's depositions. Taylor also asked the likelihood of "beating the charges in Hendricks County and beating the charges in Boone County."  (Taylor's Ex. A).  Taylor further asked Lidy what the State was offering in pleas and what he should do.

[6]     Although Lidy hoped for a "global plea, meaning a plea that would encompass both cases in both counties," with concurrent sentences that would not subject sixty-two-year-old Taylor to a *de facto* life sentence, the only offer from Hendricks County was for Taylor to plead guilty to Class A felony child molesting with a cap of forty-five years executed.  (Tr. 65).  Taylor, however, did not want to admit to a Class A felony offense, and trial was scheduled for February 14, 2011.  At the time, there were no plea negotiations with or offers from Boone County.

[7]     In January 2011, the Boone County prosecutor offered Taylor the opportunity to plead guilty as charged to the Class B felony offense by the January 24, 2011 plea agreement deadline.  If Taylor did not accept the offer, the State planned to

amend the information to two Class A felony child molesting charges based upon Taylor's age. Lidy did not communicate this plea offer to Taylor, and the plea agreement deadline passed without resolution of the case. The trial court subsequently granted the State's motion to amend the information to two counts of Class A felony child molesting. A jury convicted Taylor of both counts in February 2011, and the trial court sentenced Taylor to forty years for each conviction with the sentences to run consecutively.

[8] Following the Boone County convictions, the Hendricks County trial was rescheduled, and Lidy began plea negotiations with the prosecutor's office. Taylor eventually pled guilty to Class C felony child molesting, two counts of Class C felony sexual misconduct with a minor, and Class D felony child seduction in exchange for a twenty-five-year sentence, which ran concurrently with the eighty-year Boone County sentence.

[9] After this Court affirmed Taylor's Boone County convictions on direct appeal, Taylor filed a petition for post-conviction relief wherein he argued that Lidy was ineffective for failing to tell him about the Boone County plea offer. At the post-conviction hearing, Lidy testified that his strategy was to find a global resolution plea agreement with concurrent sentences in both counties to avoid a *de facto* life sentence. He admitted that he had not communicated the Boone County plea offer to Taylor. Specifically, Lidy never told Taylor that if he did not accept the State's offer to plead guilty to the Boone County Class B felony, the State would amend the information to two Class A felony child molesting charges. However, Lidy further testified that Taylor would not have pled guilty

to the Boone County Class B felony even if Lidy had communicated the offer to him. First, according to Lidy, Taylor never wanted to admit to a Class A or B felony offense at any point. Lidy further explained that if Taylor had accepted the Class B felony offer in Boone County while the Hendricks County case was still pending, Lidy could not "imagine [Hendricks County] doing anything except either making [Taylor] go to trial or plead the A felony because he already admitted the offense in Boone County." (Tr. 63). Lidy explained that if Taylor had pled guilty in Boone County, "it would have made it next to impossible to get any kind of a proposal that he could [have accepted in Hendricks County]." (Tr. 68). Taylor testified that he would have accepted the plea offer so that he would not have had to "put [his] family through a trial." (Tr. 101).

[10] On October 14, 2015, the post-conviction court entered thirteen pages of detailed findings and conclusions, which provide, in relevant part, as follows:

### Findings of Fact

> 1. On February 1, 2010, the Petitioner William L. Taylor ("Taylor") who was sixty-one (61) years of age at the time was charged with child molesting, a class B felony. . . . As of December 10, 2009, Taylor had already been charged in Hendricks County with ten (10) counts related to additional allegations the same complaining witness had made and these included several A felony charges.

> \*     \*     \*     \*     \*

7. [Taylor's counsel Allen] Lidy told this Court at its hearing in August that, at the time of his defense of Taylor in the Hendricks and Boone County cases, his strategy was to attempt to resolve both cases with a global plea which included concurrent sentences that would allow his sixty-two (62) year old client the possibility that he might someday be released from prison. The Courts [finds] that Lidy is telling the truth about his case strategy.

8. The Court [finds] that this was a sensible strategy to formulate on Taylor's behalf. Taylor had made recorded statements implicating himself. The complaining witness was seventeen (17) years of age and apparently prepared to testify in the State's case in chief. No other strategy was a better strategy.

9. Lidy testified that he did not think Taylor would ever plead guilty to the B felony as it would be usable against Taylor in the Hendricks County case as 404(b) evidence. This was a reasonable concern actually held by Lidy at the time, the Court [finds].

10. Lidy further believed that such an admission would result in the Hendricks County Prosecutor pulling the offer of a cap of forty-five (45) years. The Court [finds] that this was a reasonable belief Lidy actually held. Whether or not the Hendricks County Prosecutor would have done that is [] uncertain, but as a concern of the lawyer at the time is certainly not unreasonable. A plea to the B in Boone would undoubtedly have engendered risk in Hendricks County.

11. Lidy also testified that Taylor did not want to admit B felony conduct. Even after the eighty (80) year sentence was handed down and Taylor [had been] given the opportunity to plead to a concurrent term in Hendricks County, the plea was still structured as an admission to C felony and lower conduct. The Court believes Lidy is telling the truth. As a matter of fact, at no time during the pendency of either criminal case did Taylor ever want to admit to any greater sexual misconduct than fondling.

Taylor's professed desire to plead guilty to a B felony is a wish that developed only after he was convicted and it is born out of a motivation to shorten the sentences that were imposed after the State proved to a jury beyond a reasonable doubt that Taylor was guilty of A felony child molesting.

\*     \*     \*     \*     \*

14. Lidy testified that the only offer from the Boone County Prosecutor's office was for Taylor to take the maximum twenty (20) years executed on the B felony. The offer was couched with the proviso that, if it was not accepted, the State would move to amend the charge to an A felony and add a new charge.

15. Lidy testified that he did not recall passing the offer on to Taylor. This Court believes that Lidy is telling the truth that he does not recall doing this. The Court [finds] that it is more likely than not that Lidy did not, in fact communicate the plea offer to Taylor before the final pre-trial conference.[1] It is easy to infer why Lidy would not have thought doing so to be necessary in this case – incorrect though that thinking was. . . With the overall strategy of trying to avoid *de facto* life in prison, accepting a twenty (20) year sentence in Boone County, with no assurances at all that he would not get a long sentence in Hendricks and whose prosecution his guilty plea would be fortifying, would not make sense. It is not something that an attorney in Lidy's position would see as desirable for his client. . . .

16. Not only would a lawyer in Lidy's position not see such a plea offer as valuable. Neither would a defendant in Taylor's position. How would my acceptance of this plea give me a

---

[1] Taylor told this post-conviction Court that Lidy never conveyed the Boone County Prosecutor's plea offer. He is unrebutted in his testimony and the Court [finds] that as a matter of fact Lidy never conveyed the plea offer to Taylor.

chance to not die in prison, a thoughtful person in Taylor's position would ask.

17. More to the point and aside from what the hypothetical "reasonable defendant" would do, this Defendant would not have seen this offer as an attractive option from where he sat in January of 2011. Taylor testified at the post-conviction hearing that "he always wanted to plead guilty to the B felony" in order to "spare the family" a trial. That is a false statement the Court [finds]. Taylor did not always want to plead guilty. He wrote his lawyer asking what the chances were of beating the charges in both Boone and Hendricks County. In his letter, he shows that he wanted to defend the allegations and to exploit any "discrepancy" in testimony of witnesses. . . . Taylor's crocodile tears about wanting to "spare the family" carry the weight of a pocketful of tissues. The Court does not believe that Taylor would have pled guilty to B felony child molesting in Boone County in January of 2011.

\* \* \* \* \*

19. What Taylor was interested in in 2011, which remains his interest today, was to someday leave prison alive. That goal would have been placed in jeopardy by pleading guilty to a crime and getting twenty (20) years from Boone County with no assurances of what might happen in Hendricks County.

\* \* \* \* \*

Conclusions of Law

\* \* \* \* \*

2. To prove that counsel performed ineffectively, Petitioner must show both deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668 (1984) . . . .

\*　　\*　　\*　　\*　　\*

8.  [T]o show prejudice from a lawyer not timely completing a plea offer, a defendant must demonstrate (1) a reasonable probability both that he would have accepted the more favorable plea offer . . . and (2) that the plea would have been entered without the prosecution's canceling it or the trial court's refusing to accept it.

9.  Lidy did not convey a plea offer to Taylor.  He could have conveyed what was offered.  He should have conveyed what was offered.  Lidy's failure to convey the offer was unreasonable and deficient. . .   The first part of the *Strickland* test is met.

10.  Taylor, however, was not prejudiced.

\*　　\*　　\*　　\*　　\*

13.  [I]f Lidy had timely informed Taylor of the offer, it would not have made any difference.  Taylor wanted to beat the charges.  Taylor wanted to get out of prison at some point.  Taylor didn't want to admit to more than fondling C felony conduct.  Taylor would not have accomplished any of his objectives by pleading guilty to a B felony in January of 2011.

14.  Taylor has not carried his burden of proof to establish by a preponderance of the evidence a reasonable probability that he would have accepted the B felony plea offer had Lidy timely passed the offer on to him. . . .

(Post-Conviction Court's Order Denying Relief).  Taylor appeals the denial of his petition.

# Decision

[11] Taylor's sole argument is that the post-conviction court erred in denying his petition. Post-conviction proceedings do not afford the petitioner an opportunity for a super appeal, but rather, provide the opportunity to raise issues that were unknown or unavailable at the time of the original trial or the direct appeal. *Turner v. State*, 974 N.E.2d 575, 581 (Ind. Ct. App. 2012), *trans. denied*. Post-conviction procedures create a narrow remedy for subsequent collateral challenges to convictions. *Id.* The petitioner must establish his claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5).

[12] A petitioner who has been denied post-conviction relief faces a rigorous standard of review on appeal. *Dewitt v. State*, 755 N.E.2d 167, 169 (Ind. 2001). In reviewing the judgment of a post-conviction court, we consider only the evidence and reasonable inferences supporting the judgment. *Hall v. State*, 849 N.E.2d 466, 468 (Ind. 2006). We may not reweigh the evidence or reassess the credibility of the witnesses. *Id.* at 468-69. We will affirm the post-conviction court's denial of post-conviction relief unless the evidence leads "unerringly and unmistakably to a decision opposite that reached by the post-conviction court." *McCary v. State*, 761 N.E.2d 389, 391 (Ind. 2002). Only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, will the court's findings or conclusions be disturbed as being contrary to law. *Hall*, 849 N.E.2d at 469. We do not defer to the post-conviction court's legal conclusions, but do accept its factual findings

unless they are clearly erroneous. Ind. Trial Rule 52(A); *Stevens v. State,* 770 N.E.2d 739, 746 (Ind. 2002), *cert. denied*).

[13] Taylor argues that the post-conviction court erred in denying his petition because he received ineffective assistance of trial counsel when counsel failed to communicate a plea offer to him. The standard by which we review ineffective assistance of counsel claims is well-established. *Jervis v. State*, 28 N.E.3d 361, 365 (Ind. Ct. App. 2015). In order to prevail on a claim of this nature, a petitioner must satisfy a two-pronged test showing that: (1) his counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.*

[14] Counsel is afforded considerable discretion in choosing strategy and tactics, and we will afford those decisions deference. *Id.* A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* Even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. *Id.* Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Id.* We will not speculate as to what may or may not have been advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time, and under the circumstances, seems best. *Id.*

[15]   Here, the parties agree that Lidy's failure to communicate the Boone County plea offer to Taylor was deficient performance. *See Woods v. State*, 48 N.E.3d 374, 381 (Ind. Ct. App. 2015) (holding that counsel's failure to communicate plea offer to Woods was deficient performance); *Dew v. State*, 843 N.E.2d 556, 570 (Ind. Ct. App. 2006) (concluding that Dew's counsel acted unreasonably in failing to communicate the State's plea offer to Dew), ), *trans. denied*.

[16]   The sole issue, therefore, is whether Taylor was prejudiced by his counsel's deficient performance. In *Dew*, this Court explained that a petitioner satisfies the prejudice prong of *Strickland* if he shows that but for counsel's actions, there was a reasonable probability that he would have accepted the plea offer defense counsel failed to communicate to him.[2] *Dew,* 843 N.E.2d at 571.

[17]   Our review of the post-conviction court's order reveals that the court concluded that Taylor failed to show a reasonable probability that he would have accepted the Boone County Class B felony offer. Specifically, the post-conviction court did not believe Taylor's testimony that he had always wanted to plead guilty to the Boone County Class B felony. Rather, the post-conviction court concluded that, based on Taylor's age and his letter to Lidy asking if it was possible for him to beat the charges in both counties and to exploit any discrepancy in the testimony of the witnesses, Taylor's overriding goal was to find a way to leave

---

[2] The petitioner must also show a reasonable probability that the plea would have been adhered to by the prosecution and accepted by the trial court. *Woods*, 48 N.E.3d at 382. Because we conclude that petitioner did not meet his burden regarding acceptance of the offer, we need not address whether the prosecution would have adhered to the agreement and whether the trial court would have accepted it.

prison alive. In addition, the evidence revealed that Taylor did not want to admit to any sexual misconduct greater than fondling. Taylor would not have accomplished either of his goals by pleading guilty to a Class B felony in January 2011. In addition, based on evidence that a Class B felony plea in the Boone County case while the Hendricks County case was still pending could have made it impossible for Taylor to get any kind of proposal from Hendricks County that he could have accepted, the post-conviction court concluded that it would not have made sense for Taylor to plead guilty to the Class B felony. The evidence in this case simply does not lead "unerringly and unmistakably to a decision opposite that reached by the post-conviction court." *See McCary v. State*, 761 N.E.2d at 391. We affirm the post-conviction court's denial of Taylor's petition.

[18] Affirmed.

Kirsch, J., and Riley, J. concur.