## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 15 2017, 9:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Danny Smith
Branchville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Danny Smith, <br> *Appellant-Petitioner,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Respondent.* | November 15, 2017 <br><br> Court of Appeals Case No. 07A01-1606-PC-1379 <br><br> Appeal from the Brown Circuit Court <br><br> The Honorable Judith A. Stewart, Judge <br><br> Trial Court Cause No. 07C01-1012-PC-437 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Petitioner, Danny Smith (Smith), appeals the post-conviction court's denial of his petition for post-conviction relief.

We affirm.

# ISSUES

Smith presents us with six issues on appeal, which we consolidate and restate as follows:

(1) Whether he received ineffective assistance from trial counsel; and

(2) Whether he received ineffective assistance of appellate counsel.

# FACTS AND PROCEDURAL HISTORY

The relevant facts, as set forth in this court's memorandum opinion issued in Smith's direct appeal, are as follows:

> On December 7, 2006, Robert L. Smith left his house located in Brown County, Indiana, sometime in the early afternoon. When he left his house, Robert closed the door. As Robert returned to his house approximately one-half hour later and pulled into his driveway, he noticed a maroon Ford Explorer which he did not recognize parked near the front door of the house. Robert noted the license plate number of the Explorer. As Robert drove his vehicle closer to the house, Smith exited the front door of the house with a coat over his head. Smith got into the Explorer, backed up a short distance, and then kind of just took off down the yard, toward the road. Robert initially attempted to cut off the Explorer with his own vehicle, and when the Explorer got to

the road, Robert stopped his vehicle, took out his gun, and shot at the Explorer.

After the Explorer drove away, Robert reloaded his gun and stayed behind a cedar tree in the front lawn of his house because he thought that there may have been another person in his house. Robert eventually checked around the outside of the house and woods and in each room of his house to make sure that no other person remained in the area or in the house. Robert discovered that the house was trashed. Robert contacted law enforcement and provided a description of the Explorer and its license plate number. At some point, Robert discovered that a camcorder was missing from his house.

Information related to the burglary and a description of the Explorer was dispatched to officers in Brown County and its surrounding counties. Indiana State Police Trooper Justin Butler received the dispatch information at approximately 3:00 p.m. and positioned himself near the 52 mile marker in the area along Interstate 65 near an overpass. A few minutes later, Trooper Butler observed a Ford Explorer matching the description provided by dispatch traveling southbound on I-65. Trooper Butler followed the Explorer and verified that the license plate of the Explorer matched the dispatch information. The Explorer exited I-65 at Exit 50, traveled westward about three-fourths of one mile, and then pulled into a gas station.

Trooper Butler activated the emergency lights of his police vehicle and initiated a traffic stop. After he approached the Explorer and asked Smith for his driver's license and registration, Smith stated that his driver's license was suspended and that he did not have any identification on him. Trooper Butler returned to his vehicle and verified that Smith's driver's license was indeed suspended with a prior conviction. Trooper Butler and another officer who had arrived at the scene then placed Smith in custody and gave him a Miranda advisement. Smith stated that he had

been in Franklin, Indiana, with a friend.  An inventory of the Explorer included a black sweatshirt.

At some point, Detective Steve Brahaum of the Brown County Sheriff's Department arrived at the gas station.  Detective Brahaum took custody of Smith, placed him in his police vehicle, and relayed through the dispatch to have someone pick up the Explorer.  Detective Brahaum then transported Smith to the Brown County Sheriff's Department located in Nashville, Indiana.  During the trip to the Sheriff's Department, Smith asked Detective Brahaum how he could get his vehicle back and whether the case was about a burglary.  Detective Brahaum then read Smith his Miranda rights and Smith indicated that he understood.  Smith then initiated a conversation and asked Detective Brahaum several other questions, including questions related to the time frame of the burglary, if anything had been taken in the burglary, and how he was identified.

\* \* \* \*

A subsequent investigation by the detectives at the Brown County Sheriff's Department revealed that tire tracks in the yard in front of Robert's house matched the tires of the Explorer driven by Smith.

*Smith v. State*, 2010 WL 1486968 (Ind. Ct. App. Apr. 14, 2010).

[5]    On December 2, 2006, the State filed an Information, charging Smith with burglary, as a Class B felony, and driving while suspended, as a Class A misdemeanor.  On January 22, 2007, the State amended its charging Information to add an allegation that Smith was an habitual offender.  During the course of proceedings, Smith had three different court-appointed trial attorneys.  However, at a preliminary hearing on November 19, 2008, Smith indicated that he wanted to represent himself at his jury trial, which the trial court permitted after appointing his then-current attorney as standby counsel.

On November 19, 2008, Smith's jury trial commenced. During his opening statement, Smith changed his mind and indicated that he would need his trial attorney to represent him after all. The trial court held a proceeding outside the presence of the jury, after which it was determined that Smith's court-appointed attorney would represent him for the remainder of the trial. At the conclusion of the three-day trial, the jury found Smith guilty of burglary, as a Class B felony, and driving with a suspended license, as a Class A misdemeanor. At a bifurcated hearing, Smith admitted to being an habitual offender. On January 12, 2009, Smith was sentenced to eleven years for burglary, which was enhanced by twenty years for the habitual offender adjudication, and one year for driving while suspended, to be served concurrently with the burglary sentence. Smith appealed. On appeal, Smith raised one issue as to whether the trial court committed fundamental error in tendering an alibi instruction to the jury. On April 14, 2010, after review, we affirmed the trial court.

On December 8, 2010, Smith filed a petition for post-conviction relief, which was subsequently amended. On January 22, 2016, the post-conviction court conducted an evidentiary hearing, and denied Smith's petition on May 20, 2016.

Smith now appeals. Additional facts will be provided when necessary.

# DISCUSSION AND DECISION

## I. *Standard of Review*

[9]     Under the rules of post-conviction relief, the petitioner must establish the grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1, § 5; *Strowmatt v. State*, 779 N.E.2d 971, 974-75 (Ind. Ct. App. 2002). To succeed on appeal from the denial of relief, the post-conviction petitioner must show that the evidence is without conflict and leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id*. at 975. The purpose of post-conviction relief is not to provide a substitute for direct appeal, but to provide a means for raising issues not known or available to the defendant at the time of the original appeal. *Id*. If an issue was available on direct appeal but not litigated, it is waived. *Id*.

[10]    Initially, we note that Smith proceeded *pro se* on appeal. While Smith has every right to represent himself in legal proceedings, a *pro se* litigant is nevertheless held to the same standard as a trained attorney and is afforded no inherent leniency simply by virtue of being self-represented. *See Zavodnik v. Harper*, 17 N.E.2d 259, 266 (Ind. 2014). This also means that *pro se* litigants are bound to follow the established rules of procedure and must be prepared to accept the consequences of their failure to do so. *Shepherd v. Truex*, 819 N.E.2d 457, 463 (Ind. Ct. App. 2004). These consequences include waiver for failure to present a cogent argument on appeal and adherence to Indiana Appellate Rule 46(A)(8). Here, Smith's appellate brief consists of thirty pages without an appropriate statement of the case or statement of the facts and without a single reference to the record, appendix, or transcript. While we prefer to decide issues on the merits, where the appellant's noncompliance with appellate rules

is so substantial as to impede our consideration of the issues, we may deem the alleged errors waived. *Id*. Although we would be justified to waive Smith's issues on appeal, we will nevertheless attempt to address his arguments. However, we refuse to comb through the record or transcript to find evidence to support his allegations as we will not become an "advocate for a party, or address arguments that are inappropriate or too poorly developed or expressed to be understood." *Id*.

## II. *Ineffective Assistance of Counsel*

[11] Smith contends that he was denied the effective assistance of both trial and appellate counsel. The standard by which we review claims of ineffective assistance of counsel is well established. In order to prevail on a claim of this nature, a defendant must satisfy a two-pronged test, showing that: (1) his counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's errors the result of the proceeding would have been different. *Jervis v. State*, 28 N.E.3d 361, 365 (Ind. Ct. App. 2015) (citing *Strickland.v Washington*, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) *reh'g denied*), *trans. denied*. The two prongs of the *Strickland* test are separate and distinct inquiries. *Id*. Thus, "if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001) (quoting *Strickland*, 466 U.S. at 697) *reh'g denied; cert. denied*, 537 U.S. 839, 123 S.Ct. 162, 154 L.Ed.2d 61 (2002).

[12] Counsel is afforded considerable discretion in choosing strategy and tactics and we will accord those decisions deference. *Jervis*, 28 N.E.3d at 365. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. The *Strickland* court recognized that even the finest, most experienced criminal defense attorney may not agree on the ideal strategy or the most effective way to represent a client. *Id*. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Id*. Furthermore, we will not speculate as to what may or may not have been advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best. *Id*.

### A. *Trial Counsel*

### 1. *Habitual Offender Charge*

[13] First, Smith contends that his trial counsel was ineffective for failing to object to the State's amendment of the habitual offender charge. To enhance Smith's sentence for being an habitual offender, the State had to prove that Smith had incurred two prior, unrelated felony convictions. Ind. Code § 35-50-2-8(A). As such, in its initial Information, the State alleged that Smith had six prior unrelated felonies: possession of methamphetamine in 2004, theft in 2000, escape in 1993, escape and criminal confinement in 1989, and burglary in 1989. On April 18, 2008, the State moved to amend the Information by striking Smith's 1989 escape and criminal confinement convictions on the basis that

these two convictions were "not unrelated to another conviction alleged." (Appellant's App. Vol. II, p. 49).

[14] Pursuant to Indiana Code section 35-34-1-5(b), the State must make amendments of substance to the charging information thirty days before the omnibus date. However, the State may make amendments to the information with respect to any defect, imperfection, or omission in form which does not prejudice the substantial rights of the defendant at any time. I.C.§ 35-34-1-5(c).

> An amendment is one of form and not of substance if a defense under the original information would be equally available after the amendment and the accused's evidence would apply equally to the information in either form. Further, an amendment is of substance only if it is essential to making a valid charge of the crime.

*Fajardo v. State*, 859 N.E.2d 1201, 1205 (Ind. 2007). When the State amended Smith's habitual offender Information by striking two prior felony convictions which could have been used to support the enhancement, the State made an amendment in form to the charging Information.

[15] By amending the charging Information in form, the State actually increased its own burden in establishing the habitual offender enhancement. As pointed out by the State, under the initial Information, the State could rely on fifteen combinations of felony pairs to support the habitual charge, whereas after the amendment was filed, only six pairs remained. Even if trial counsel's failure to object could be characterized as falling below an objective standard of reasonableness, Smith cannot establish that he was prejudiced by this omission.

## 2. *Failure to Investigate*

Next, Smith asserts that his trial counsels were deficient because all three counsels "failed to investigate and raise a defense" which Smith felt necessary to be pursued. (Appellant's Br. p. 11). Smith maintains that he "gave all counsel information, names of witnesses to be deposed, discovery he knew was being withheld by the State, the fact that he believed the victim and his residence was a drug house leading to his false allegation against him, as well as other things, only to be ignored[.]" (Appellant's Br. p. 11). The post-conviction court summarily concluded that Smith "failed to support or give proof of such prejudice." (PCR Order p. 8).

While it is undisputed that effective representation requires adequate pretrial investigation and preparation, it is equally well settled that we should resist judging an attorney's performance with the benefit of hindsight. *McKnight v. State*, 1 N.E.3d 193, 200 (Ind. Ct. App. 2013). Accordingly, when presented with a claim of ineffective assistance for failure to investigate, we apply a great deal of deference to counsel's judgments. *Boesch v. State*, 778 N.E.2d 1276, 1283 (Ind. 2002).

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitation on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.

*Strickland*, 466 U.S. at 690-91, 104 S.Ct. 2052. In addition, establishing failure to investigate as a ground for ineffective assistance of counsel requires going beyond the trial record to show what the investigation, if undertaken, would have produced. *Woods v. State*, 701 N.E.2d 1208, 1214 (Ind. 1998), *cert. denied*, 528 U.S. 861 (1999). "This is necessary because success on the prejudice prong of an ineffectiveness claim requires a showing of a reasonable probability of affecting the result." *Id*.

[18] The record reflects that Smith's subsequent trial counsels filed pretrial motions, filed a notice of alibi, deposed witnesses, requested and reviewed discovery materials, tendered jury instructions, cross-examined witnesses, moved for a judgment on the evidence, challenged jury instructions, and presented a closing argument. While Smith's argument appears to focus on his self-serving allegation that the victim's house was a drug house, Smith did not present any evidence to support this contention. Moreover, police officers testified outside the presence of the jury that the victim had never been the target of a drug investigation and that the officer had no inclination to believe that the victim was involved with drugs or people who were involved with drugs at the time of the burglary. Accordingly, we conclude that Smith failed to establish that his trial counsels' conduct fell below an objective standard of reasonableness.

### 3. *Conflict of Interest*

[19] At the outset, it should be pointed out that Smith alleged a conflict of interest with each trial attorney that represented him. With respect to his first two trial

counsels, Smith asserts that they continued to represent him after he had asked counsel to withdraw; however, Smith now fails to establish how he was prejudiced by their conduct.

[20] With respect to his third trial counsel, Smith contends that he "wouldn't do anything that I wanted him to do to investigate this case unless I would agree to meet him in a room and have sex with him." (PCR Tr. p. 20). Upon evaluating Smith's self-serving testimony during the post-conviction proceeding, the post-conviction court concluded that "the testimony flies in the face of [Smith's] own testimony during the trial proceedings as well as other evidence and indications in the record." (PCR Order p. 12). As the post-conviction court is "the sole judge of the weight of the evidence and the credibility of witnesses," we affirm the post-conviction court and conclude that Smith's third trial counsel was not ineffective with respect to Smith's conflict of interest allegation. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004).

#### 4. *Suppression of Evidence*

[21] Next, Smith asserts that his trial counsels were ineffective for failing to move to suppress evidence seized during the search of his vehicle and statements made after invoking his *Miranda* rights. The post-conviction court rejected these arguments as Smith did "not demonstrate[] that such motions would have been successful, as is warranted here." (PCR Order p. 9).

[22] The evidence presented indicates that upon Smith's arrest, his vehicle was searched pursuant to an inventory search. As part of their community-

caretaking function, police officers may impound a vehicle because it is abandoned and obstructs traffic. *See Wilford v. State*, 50 N.E.3d 371, 375 (Ind. 2016). Upon impounding the vehicle, the officers must "perform an administrative inventory search to document the vehicle's contents to preserve them for the owner and protect themselves against claims of lost or stolen property." *Id*. at 374. Here, police officers placed Smith under arrest after they determined his license had been suspended. Once in custody, and before impounding the Explorer, the officers performed a general inventory search pursuant to the department's standard operating procedure. Accordingly, we cannot say with reasonable probability that, even if counsel would have moved to suppress the evidence discovered pursuant to the inventory search, he would have been successful. *See Strickland*, 466 U.S. at 690.

[23] We reach a similar result with respect to Smith's *Miranda* contention. Smith asserts that police officers continued to pressure him for a statement after he had invoked his right to counsel. It is generally acknowledged that once a person in custody has requested counsel, he "is not subject to further interrogation by authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). The record reflects that while Smith initially asked for counsel after being read his *Miranda* rights, he himself subsequently initiated a conversation with the officer in the officer's vehicle. Although his trial counsel considered objecting to the admission of Smith's statements, after listening to the recording from the

officer's vehicle, counsel conceded that "it appears [Smith] was the one who initiated conversation in the car." (Direct Appeal Tr. p. 585). Accordingly, as Smith cannot establish that his trial counsel's performance fell below an objective standard of reasonableness by deciding not to file a motion to suppress after listening to the recorded conversation, we find that trial counsel was effective.

### 5. *Challenge to Venue*

[24] Next, Smith contends that his trial counsel was ineffective for failing to challenge venue with respect to the driving while suspended charge. Because the victim, who was located in Brown County, could not identify him, Smith alleges that the jury trial on his driving while suspended charge should not have been conducted in Brown County, but should have been conducted in the county where he was ultimately arrested.

[25] The State has the burden to prove venue by a preponderance of the evidence. *Baugh v. State*, 801 N.E.2d 629, 631 (Ind. 2004). While the victim could not identify Smith as the burglar, there is sufficient evidence placing Smith at the victim's home in Brown County. First, the victim saw the burglar drive away through his yard and wrote down the license plate of the Explorer. This license plate and tire marks left in the yard, both corresponded with the license plate and the tire marks of the Explorer driven by Smith. Accordingly, Smith failed to establish that his trial attorney performed deficiently by not challenging venue as this challenge would have been meritless.

### 6. *Jury's Impartiality*

Smith argues that "trial counsel failed to object to the *voir dire* and the sworn jury, protecting his client's right to a fair trial by an unbiased and impartial jury." (Appellant's Br. p. 16). We hasten to point out that Smith acted *pro se* and conducted his own *voir dire* of the jury. "[A] defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of effective assistance of counsel." *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975).

With respect to the jury trial proceeding itself, Smith asserts that trial counsel was ineffective by failing to object to distinct behavior by panel members. At a certain point in the trial, the trial court called a sidebar and indicated that it thought "one of our jurors is snoring at times." (Direct Appeal Tr. p. 526). Upon consultation with trial counsel, Smith's counsel agreed that the jury should take a break. In order to move for a mistrial based on an inattentive juror, it must be established that "the juror was actually inattentive and the juror's inattention resulted in actual prejudice." *Chubb v. State*, 640 N.E.2d 44, 48 (Ind. 1994). Merely "falling asleep for a short time does not necessarily constitute a sufficient cause for a new trial absent a convincing explanation as to why the alleged behavior deprived the defendant of his rights." *Id*. In his appellate brief, Smith fails to present any evidence that the juror was actually asleep or the duration he was sleeping. Therefore, as he cannot establish with a reasonable probability that a motion for mistrial would have been granted, trial counsel was not ineffective.

A similar contention is brought with respect to a juror who asked for a break to change the battery in his or her hearing aid. Smith likewise did not establish that the juror could not hear the proceedings or what the juror might have missed. Therefore, as Smith does not establish prejudice, we cannot say that trial counsel was deficient.

### 7. *Deposition and Subpoena of Witnesses*

Lastly, Smith alleges that he "needed the assistance of counsel to depose twelve (12) witnesses to prepare for trial, and he was never given the opportunity to depose these witnesses." (Appellant's Br. p. 18). He also asserts that his trial counsel did not properly cross-examine the victim and should have impeached the victim for lying under oath.

As a general rule, "an attorney's failure to call any particular witness or any witnesses at all, is not proof of incompetent representation without further proof of harm resulting therefrom." *Robertson v. State*, 319 N.E.2d 833, 835 (Ind. 1974). In order to demonstrate prejudice, Smith must "show that other potential witnesses would have provided . . . evidence which would have assisted in . . . [his] defense." *Stewart v. State*, 517 N.E.2d 1230, 1233 (Ind. 1988). Despite formulating some generalized statements, Smith failed to present or direct us to any evidence supporting his claims. Accordingly, trial counsel did not provide ineffective assistance of counsel.

### B. *Appellate Counsel*

Our standard of review for claims of ineffective assistance of appellate counsel is the same as for trial counsel's ineffectiveness. *Fisher*, 810 N.E.2d at 676. Indiana law recognizes three basic categories for claims of appellate counsel's ineffectiveness: "(1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well." *Id.* at 677 (citing *Bieghler v. State*, 690 N.E.2d 188, 193-95 (Ind. 1997), *cert. denied*, 525 U.S. 1021, 119 S.Ct. 550, 142 L.Ed.2d 457 (1998)). Here, Smith presents this court with issues which all are within the province of the second category and which will lead to a finding of deficient performance only when the reviewing court determines that the omitted issues were significant, obvious, and "clearly stronger than those presented." *Id.* at 194. "[T]he decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel. *Id.* at 193.

### 1. *Alibi Instruction*

Turning to his appellate counsel, Smith first asserts that the jury instruction with respect to his alibi, appealed by appellate counsel as under a fundamental error theory, should have been raised as a preserved error and, therefore, her conduct was prejudicial and ineffective.

The record reflects that while trial counsel did file a notice of alibi with the trial court on January 15, 2008, subsequent trial counsel did not propose to tender a jury instruction on the alibi. Therefore, as trial counsel had not raised the jury instruction before the trial court, appellate counsel appropriately characterized

the issue as one of fundamental error. Accordingly, appellate counsel did not provide ineffective assistance.

### 2. *Perceived Errors by Trial Counsel*

[34] Next, in one-line arguments, Smith contends that his appellate counsel was ineffective for failing to raise the lack of venue on the driving while suspended Count, and for failing to raise the juror bias and conduct issues. Because we already determined that trial counsel was not ineffective on these issues, appellate counsel cannot be found ineffective for failing to raise meritless claims.

### 3. *Motion for Continuance*

[35] Smith also argues that his appellate counsel was ineffective because she failed to challenge the trial court's denial of his motion for continuance. Deciding to represent himself on the morning of the jury trial, Smith requested a continuance so as to prepare himself for trial. After the State objected, the trial court denied Smith's motion.

[36] The decision to grant or deny a motion for a continuance is within the sound discretion of the trial court. *Litherland v. McDonnell*, 796 N.E.2d 1237, 1240 (Ind. Ct. App. 2003), *trans. denied*. To succeed on this issue, appellate counsel would have to establish that the trial court abused its discretion by denying Smith's motion for a continuance when Smith had shown good cause for granting the motion. *See id*.

The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Contrawise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request was denied.

*Ungar v. Sarafite*, 376 U.S. 575, 589-590, 84 S.Ct. 841, 849-850, 11 L.Ed.2d 921 (1964) (citations omitted), *reh'g denied*. "[A]mong the things to be considered on appeal from the denial of a motion for continuance, we must consider whether the denial of a continuance resulted in the deprivation of counsel at a crucial stage in the proceedings." *Hess v. Hess*, 679 N.E.2d 153, 154 (Ind. Ct. App. 1997). We also consider whether the record demonstrates dilatory tactics on the part of the movant designed to delay coming to trial. *See id*. at 155.

[37] On the morning of trial, Smith requested his trial attorney to withdraw because Smith was not convinced that his trial attorney was prepared for trial, despite his trial counsel's assurances to the contrary. Smith wanted to represent himself and requested more time to interview witnesses because "[t]here is clearly evidence that this case might be drug related." (Direct Appeal Tr. p. 103-04). We find that the trial court was within its discretion to deny Smith's motion as this motion merely constituted a dilatory tactic. Smith's case had been pending for almost two years. He was represented by his third trial counsel and his

motion was at least his seventh request to continue his jury trial. Therefore, as this issue is not clearly stronger than the one raised on direct appeal, we conclude that appellate counsel was not deficient in failing to bring this issue before the appellate tribunal.

### 4. *Other Allegations*

[38] Smith also contends that the State committed a Brady violation because it improperly withheld certain evidence that could have exculpated him. *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (the prosecution is mandated to disclose evidence that is favorable to the defendant). Specifically, Smith asserts that testimony by a certain witness at trial establishes that a taped police interview existed that "was never turned over to the defense who required it to impeach this witness[.]" (Appellant's Br. p. 24). Similarly, Smith alleges that certain other evidence—such as fingerprint evidence and criminal records—although requested by him prior to trial, was never turned over. By Smith's own admission, this issue was known at the time of the direct appeal and therefore cannot now be raised by a post-conviction proceeding. *See Collins v. State*, 817 N.E.2d 230, 232 (Ind. 2004) ("[B]ecause a post-conviction relief proceeding is not a substitute for direct appeal but rather a process for raising issues unknown or not available at trial, an issue known and available but not raised on direct appeal may not be raised in post-conviction proceedings").

Likewise, Smith asserts that (1) the State committed prosecutorial misconduct; and (2) he was not tried by an impartial and competent jury. Both of these claims were known and available during the direct appeal in this case and therefore cannot now be raised. *See id.*

# CONCLUSION

Based on the forgoing, we conclude that the post-conviction court properly denied Smith's petition for relief as he was not represented by ineffective counsel.

Affirmed.

Robb, J. and Pyle, J. concur